[Criminal No. 640.   Filed February 28, 1927.]

[253 Pac. 629.]

WATT HOLDER, Appellant, v. STATE, Respondent.

Messrs. O'Sullivan & Morgan, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

LOCKWOOD, J.—Watt Holder, hereinafter called appellant, was charged by an information filed in the superior court of Yavapai county with a felony, the information alleging:

"That the said Watt Holder did then and there willfully, unlawfully, and feloniously alter the brand upon a certain two year old steer, the personal prop-

erty of Richard W. Bullard, with intent to feloniously convert the same to his own use.''

To this information appellant entered the following pleas: First, not guilty; second, a former judgment of acquittal of the offense charged; and, third, once in jeopardy. The case was tried before a jury, and the following verdict was returned:

''We, the jury, duly impaneled and sworn in the above-entitled action, upon our oaths do find the defendant guilty of felony, to wit, altering a brand.

''R. L. MERRITT, Foreman.''

Motions for new trial and in arrest of judgment were duly made, which were by the court denied, and on the fourteenth day of December appellant was sentenced to imprisonment in the state prison for not less than one nor more than three years. Notice of appeal was duly filed, and the matter is before us for review.

There are nine assignments of error raising in effect three propositions of law, which we shall discuss in their order. It is first contended by appellant that, when he pleaded former acquittal and once in jeopardy, he raised issues of fact which should have been determined by a jury, and that, since the record fails to show any determination of such pleas, there can be no judgment on a verdict of guilty. It appears from the record these pleas were properly made, and the clerk, after reading the information, also stated to the jury that appellant had entered pleas of not guilty, of former acquittal, and once in jeopardy, specifying the case wherein appellant claimed he had been once in jeopardy and had been once acquitted. During the course of the trial, appellant offered certain records of the superior court of Yavapai county and the justice court of Congress precinct in that county in support of these last two pleas, and certain stipulations of fact were made be-

tween appellant and the state bearing thereon. The court thereafter sustained an objection to the offer of the record, and, when the case was submitted to the jury, no reference was made to these pleas, but in its instructions the court submitted only the issues of guilty and not guilty, and the verdict above set out was the only one returned.

Appellant on this point relies upon sections 1005, 1006, 1084, 1088 and 1089, Penal Code of 1913, which read, so far as material, as follows:

"1005. An issue of fact arises:

"(1) Upon a plea of not guilty.

"(2) Upon a plea of former conviction or acquittal of the same offense.

"(3) Upon a plea of once in jeopardy."

"1006. Issues of fact must be tried by jury unless a trial by jury be waived in criminal cases not amounting to felony, by the consent of both parties, expressed in open court and entered in its minutes. In cases of misdemeanor the jury may consist of twelve, or any number less than twelve, upon which the parties may agree in open court."

"1084. A verdict upon a plea of not guilty is either 'guilty,' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the indictment or information. Upon a plea of a former conviction or acquittal of the same offense it is either 'for the state,' or 'for the defendant.' . . . "

"1088. The court must give judgment upon the special verdict as follows: . . .

"(2) If the plea is a former conviction or acquittal of the same offense, the court must give judgment of acquittal or conviction, as the facts prove or fail to prove the former conviction or acquittal."

"1089. If the jury do not, in a special verdict, pronounce affirmatively or negatively on the facts necessary to enable the court to give judgment, or if they find the evidence of facts merely, and not the conclusions of fact from the evidence, as established to their satisfaction, the court must order a new trial."

—and cites a long series of cases from California, Utah, Montana, Idaho and South Dakota which tend to support his contention. The precise point thus raised has been before the Supreme Court of the territory of Arizona in the case of *Storm* v. *Territory*, 12 Ariz. 26, 94 Pac. 1099; Id., 12 Ariz. 109, 99 Pac. 275. So far as the legal question involved is concerned, that case is on all-fours with the one at bar. In it this court reviewed all of the cases cited in appellant's brief which had then been decided, while the statutes covering the matter at that time were substantially the same as at present. In the original opinion the court said:

"Formally viewed, the portion of the court's instruction complained of was erroneous, and the defect of such verdict is error. The instruction should have directed the jury to return a verdict upon these special pleas, 'for the territory,' and such a verdict should have been returned. Yet manifestly the error worked no injustice to the defendant. We find in section 1174 of the Penal Code that 'neither a departure from the form or mode prescribed in respect to any . . . proceedings, nor an error or mistake therein, shall render the same invalid, unless it shall have actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.' It is here manifest that not only no substantial right of the defendant was prejudiced, but that not even a fanciful injury has been done him. The special pleas interposed by the defendant, and the evidence offered in their support, were considered and ruled upon. In the state of the record with respect to these pleas, matters of law alone were presented. These were correctly determined. The verdict of the jury, which the court lawfully should direct, would have been but the formal carrying out of the court's adjudication of the legal merits of the defense. To reverse the judgment and remand the case for a retrial would be to give the defendant an opportunity to have the charge against him passed upon by a different set of

twelve men, but would not have effect to secure to him any right or privilege which was not fully accorded to him upon the trial now reviewed. If section 1174, just quoted, is to have application, here is a fitting application. The error not being prejudicial, or in the remotest degree tending to be prejudicial to the defendant, the judgment will not be reversed by reason thereof.''

Appellant admits that, if we apply the doctrine of the Storm case, this point is not well taken, but urges, first that, since the rule laid down therein is contrary to the weight of authority, we should refuse to follow it; and, second, that we have already in effect, although not in express language, overruled it in the case of *State* v. *Phillips,* 27 Ariz. 349, 233 Pac. 586.

In the case last referred to, defendant Phillips entered a plea of former acquittal to an information for larceny, waived a jury, and requested an immediate trial before the court on the issue, which was given. The court sustained the plea, and, from the order sustaining, the state appealed. In determining the case we said:

''Just why the court permitted the defendant to waive a jury and try the case itself does not appear. The offense with which he was charged, grand larceny, is a felony, and in crimes of this character all issues of fact must be tried by a jury. This is just as true when the issue arises upon a plea of former acquittal as upon one of not guilty, and it is only in criminal cases not amounting to a felony that trial by jury may be waived. . . . This being true, the court was without jurisdiction to try, unaided by a jury, the issue raised by the plea of former acquittal, and necessarily its order sustaining this plea was a nullity. . . . ''

We do not think the two cases are in conflict. In the Storm case a jury was present, and the issue was duly presented before it, while in the Phillips case no jury was ever called, and the court undertook to

determine all the issues of fact involved, without the aid of a jury. We think the distinction between the two cases is indicated in the opinion on the motion for rehearing in the Storm case. We quote from that opinion as follows:

"It must not be overlooked that the issue raised by a plea of former jeopardy is different in its nature from that raised by a plea of not guilty. . . . The analogy between the proceedings on this issue and the proceedings in civil cases is manifest. At common law the defendant must set forth the record upon which he predicates his claim of former jeopardy. Upon demurrer thereto the court may disallow the plea. We have so changed the procedure *that the basis of the plea is not disclosed until evidence upon it is offered;* but that change does not in itself afford a reason for denying to the trial court the authority to disallow the plea as a matter of law upon the record offered to support it. . . . The Constitution compels the submission to the jury of the issue upon the merits, even though the evidence incontestably demonstrates the defendant's guilt. The jury can repudiate all the evidence with or without reason, and find the defendant not guilty. The Constitution does not compel submission to the uncontrolled judgment of the jury of an issue made by the plea of former jeopardy, unsupported by facts. . . . If such verdict may lawfully be directed, it is a necessary inference that where the record affirmatively shows that the jury, with legal propriety, could not have found for the defendant upon the plea of former jeopardy and the trial court formally so adjudicated and so instructed the jury, the defendant has been deprived of no fundamental right by the absence of the jury's finding upon the plea and is uninjured thereby." (Italics ours.)

The reason why the legislature provided that the issues of once in jeopardy and former acquittal should be issues of fact and triable before the jury is apparent from this quotation. As was well said, under the common law, at the time the plea was made, the

record in support thereof was presented to the court, and it could pass on its legal sufficiency at the time. Under the statute the court has no means of determining whether a real issue of fact will be tendered or whether the question is merely one of law, until after the trial has actually commenced. Such being the case, the legislature naturally and properly provided that, after the plea was entered, a jury must be impaneled to hear the evidence in support thereof. If after the evidence is presented it is insufficient as a matter of law to support the plea, or no evidence is offered, the court has the right to, and should, as was held in the Storm case, direct the jury to return a verdict in favor of the state, and the mere failure of the jury to return the only verdict which as a matter of law it could have given was a technical irregularity not affecting the general verdict, while the failure to call a jury at all was jurisdictional in the Phillips case.

Nor do we see any reason for departing from the doctrine of the Storm case as a matter of principle. If under section 1174 of the Penal Code (1901) as it then existed "neither a departure from the form or mode prescribed . . . shall render the same invalid, unless it shall have actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right," much more should we disregard technical irregularities or error when the Constitution itself expressly provides:

"No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done." Const. Ariz., art. 6, § 22.

The second question of law is as to the sufficiency of the evidence to support the verdict, and incidentally as to the admission of evidence of collateral offenses. Taking the latter point first, it is well

established in this jurisdiction that, whenever evidence of another offense tends to establish a common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other, it is always admissible. *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279; *Dorsey* v. *State,* 25 Ariz. 139, 213 Pac. 1011. Paragraph 3727, Revised Statutes of Arizona of 1913, Civil Code, expressly provides that such evidence is admissible in the case of larceny of cattle, and the offense in the case at bar is so closely related to larceny that we think on principle the same rule should obtain.

It is also admissible on the question of the identity of the person committing the offense. When a number of animals were found misbranded into brands under the control of appellant the conclusion would be irresistible that there was an attempt on his part to convert them or else an effort on the part of another person to throw suspicion upon him, and it would be for the jury to determine which of the two alternatives was the correct one.

So far as the sufficiency of the evidence to sustain the verdict is concerned, it is not necessary for us to review it. We are satisfied that it points clearly to the conclusion, either that appellant was guilty as charged, or else that some other person engaged in a deep laid plot to convict him of the crime. Taking into consideration the testimony that appellant, when arrested, offered to sign an agreement to leave the state and never return if the true owner of the animal did not prosecute, we think the jury was justified in believing he was guilty as charged, as such an offer on his part would indicate a consciousness of guilt. In cases of this nature each one must stand on its own facts, and circumstantial evidence is generally the only kind available. If it were required that the

state should prove a defendant was actually seen in the act of misbranding cattle, conviction would be practically impossible. Cattle rustlers do not as a rule invite spectators to witness their acts. Nor do we think the same rule as to the character of possession of the stolen goods should prevail in this class of cases as in ordinary larceny. In the latter instance the natural instinct of the thief is to retain the stolen property in his physical possession or under his immediate control, while in cattle rustling the obvious course is to release it on the open range as soon as the brand is altered. The evidence was sufficient to sustain the verdict.

This brings us to the third, and, in our opinion, the most difficult question to determine. The verdict of the jury hereinbefore quoted is attacked as being a special verdict, which, within the rule of *Kimball* v. *Territory*, 13 Ariz. 310, 115 Pac. 70, does not supply all the essential elements necessary to sustain a judgment of conviction, and counsel has cited a number of cases from other states to this effect. We agree that the general principle of law is that a special verdict must be in such language that it is an express and unequivocal declaration that the defendant has done everything necessary to constitute the particular offense charged, and that nothing short of this can stand. On the other hand, it is equally true that no particular form of language is necessary in a general verdict. If it is so worded that the only reasonable conclusion which can be drawn from it is that the defendant was guilty as charged in the information, it is sufficient. 16 C. J. 1101.

In the case at bar, the gist of the offense wherewith the appellant was charged was that he did "alter a brand upon a certain two year old steer, the personal property of Richard W. Bullard, with intent to feloniously convert the same to his own use." In order

to convict, it was necessary for the state to prove four things: (1) That the defendant altered a brand; (2) that it was on an animal which was of the general kind described in the information; (3) that the animal was the property of the person alleged in the information; and (4) that it was done with intent to convert the animal to his own use.

A jury in a criminal case may return either a general or a special verdict. A general verdict is a definite finding that the defendant did or did not commit the crime charged and, under section 1084, Penal Code of 1913, may be stated in the words ''guilty'' or ''not guilty.'' This simple language is all-sufficient to import as a matter of law either a conviction or an acquittal of the highest offense included in the indictment or information. On the other hand, section 1085 of the Penal Code of 1913 defines a special verdict as follows:

''1085. A special verdict is that by which the jury find the facts only, leaving the judgment to the court. It must present the conclusions of fact as established by the evidence, and not the evidence to prove them, and these conclusions of fact must be so presented as that nothing remains to the court but to draw conclusions of law upon them.''

It is obvious the verdict as returned cannot stand as a special one in conformity with section 1085, *supra,* as the four essential elements of the crime charged in the information and set forth above are not found. Indeed, considering the language and form of the verdict, we think it is conclusive the jury had no intention whatever of attempting to return a special verdict, or of finding any facts, but meant to present a general verdict. Is it good as the latter? Had the jury stopped with the word ''guilty,'' they would have returned a verdict which, according to the language of section 1084, *supra,* would have im-

ported that the appellant had committed the precise offense charged in the information. Did the addition of the words "felony, to wit altering a brand," add such a qualification as to destroy the effect of the previous language? It is the general rule of law that we should look to the information to determine whether a verdict is sufficient. We see that the crime set up therein is a felonious alteration of a brand, and it is the only kind of felonious alteration known to our law. We think it would be hypertechnical to say that, when a jury finds a defendant "guilty" and adds words describing unmistakably the crime charged by the information, the verdict is void, even though the words of description are not as apt as a careful lawyer might use. In the case at bar, we cannot hold the jury did not find the appellant guilty of the precise offense of which he was accused, except by disregarding common sense, logic and the plain facts, and resorting to verbal quibbling and technical rules of construction worthy of that character in Hudibras "who could a hair divide, between the south and southwest side."

We reaffirm the general doctrine of the Kimball case to the effect that:

"A verdict of 'guilty' is a finding of the jury upon every element necessary to constitute the crime as laid in the indictment, and that a verdict which finds a defendant guilty of but one of a number of essential elements of a crime is not a verdict sufficient to sustain a judgment of conviction of the crime charged."

But we refuse to stultify our reasons and consciences by assuming the language used in the verdict in this case was an attempt to find on the elements of the crime at all. We consider it rather as an effort to describe the crime by its supposedly legal name, and as sufficient to identify it beyond any pos-

sible doubt as the precise one set up in the information. Anything in the Kimball case inconsistent with this conclusion is expressly overruled.

The verdict was sufficient in form, and, there being no reversible error in the record, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.