356 P.2d 1106

**STATE of Arizona, Appellee,**

v.

**Wilmer W. EVANS, Appellant.**

No. 1146.

Supreme Court of Arizona.

Nov. 16, 1960.

Rehearing Denied Dec. 20, 1960.

Stephen W. Connors, Phoenix, and Robert S. Murlless, Globe, for appellant.

Wade Church, Atty. Gen., Newman W. White, Asst. Atty. Gen., Harold A. Beelar, Gila County Atty., Robert McGhee, Deputy Gila County Atty., Globe, for appellee.

STRUCKMEYER, Chief Justice.

Defendant Wilmer W. Evans was tried by a jury in the Superior Court of Gila County, Arizona, and convicted of the first-degree murder of his wife, Frances Evans. From that conviction and from a sentence of life imprisonment he appeals. Pursuant to our usual rule, the material facts will be stated in the light most favorable to sustaining the conviction. State v. Milton, 85 Ariz. 69, 331 P.2d 846; State v. Merryman, 79 Ariz. 73, 283 P.2d 239.

Defendant and Mrs. Evans were married at Magnolia, Mississippi, on September 28, 1957 and immediately thereafter commenced a honeymoon trip by automobile through the southwest United States. On October 5, 1957, there occurred the first of two automobile accidents of striking similarity. While defendant and his wife were driving through the Salt River Canyon between Globe and Show Low, Arizona, their automobile left the road and plunged down into the canyon below. Defendant, who was driving, jumped from

the vehicle just as it left the road but his wife, being unable to do so, was carried into the canyon and received serious injuries. At this time there was carried on the life of Mrs. Evans policies of automobile trip insurance totalling $100,000. Defendant was the beneficiary thereof. This insurance was taken out five days before the accident and expired a few hours after the accident.

After Mrs. Evans was released from the hospital in Globe, Arizona, she and defendant continued on their trip which took them through Colorado and Nevada. At Phoenix, on November 7, 1957, defendant took out three day trip insurance on the life of his wife with two policies for $50,-000 each, a total of $100,000. On the same day he rented a 1957 Ford automobile and they drove to Globe, Arizona, where they stayed in a motel that night.

On the morning of November 8, 1957, at about the hour of 7 o'clock A.M., when the manager of the motel came to work, the defendant's automobile was not in the motel parking area. However, later at about 8 o'clock A.M. defendant and his wife were observed entering the vehicle. At that time Mrs. Evans looked sick and had difficulty in walking. They went to a restaurant across the street for breakfast. There witnesses observed that Mrs. Evans did not order, drank only a cup of hot chocolate, sat staring at the wall and failed to answer questions asked of her by the waitress and others. At this time her hair was uncombed and she had on no make-up. At approximately 9 o'clock A.M. defendant and Mrs. Evans left the restaurant and drove east on Highway 70, toward Coolidge Dam, defendant at the wheel of the car.

Defendant was next seen by a passing truck driver lying along the edge of the road near Coolidge Dam. The driver testified that defendant smiled and waved. An hour later he hailed a passing car and told the occupants of that vehicle that his car had gone into the lake with his wife in it. The body of Frances Evans was to be seen floating in the water. Two of the passengers descended to the lake and removed her body. An autopsy disclosed that death was due to drowning and tests on body fluids established that there was present in her body large quantities of barbiturates in the form of phenobarbital.

The car entered the lake at a point where the guard cable was down and where the grade to the water was 73%. When the car was removed from the lake it was found that all the doors were closed and all the windows were up except the left front window on the driver's side. The Ford automobile was taken to a garage in Globe, Arizona, where it was found that a nut on the brake lines had been loosened, causing the brake fluid to leak. Expert testimony was to the effect that had this condition been present at the time

the car was rented in Phoenix, it would have been without braking power before arriving in Globe the previous day. There was also found under the hood of the car a stick about 11 inches long, the ends of which, when microscopically examined, were determined to have on them oily substances similar to those found on the engine of the automobile.

The State theorized that early in the morning of November 8th, while Mrs. Evans was asleep with an overdose of barbiturates, defendant took the Ford automobile to the Coolidge Dam area; that later when he returned with his wife he stopped near a point where the guard rail was down; that he loosened a nut on the brake line, placed a stick between the manifold and the carburetor in such a fashion as to cause the throttle to accelerate the motor; then from the outside of the car, with the door closed, shifted the transmission into forward gear, causing the automobile to move forward over the shoulder of the road and down into the lake below. To support this theory, it was established that when the car was rented at Phoenix, the previous day, its speedometer registered 8,958 miles; that after being removed from the lake, it read 9,128.3 miles; and that the difference of 170.3 miles was approximately the mileage from Phoenix to Globe, from Globe to Coolidge Dam, from Coolidge Dam back to Globe and from Globe back to Coolidge Dam.

Two inmates of the Gila County Jail testified that while Evans was confined in jail pending trial he admitted to them that he had killed his wife.

The defendant's testimony, briefly summarized, was to the effect that as they approached the Coolidge Dam his wife was driving; that suddenly his wife said "Baby, no brakes"; that he managed to jump free of the vehicle just as it left the road, as he did in the previous accident in the Salt River Canyon, but that his wife was carried down with the automobile into the lake. Defendant devotes extensive argument to the proposition that the evidence is not sufficient to sustain a verdict of guilty. He attacks various aspects of the State's case, such as the evidence concerning the brakes, the stick and the medical opinion as to the effects of barbiturates.

We think that the evidence supports the verdict of the jury. While it is possible to minimize each piece of evidence on the whole it carries the conviction that the charges are sustained beyond a reasonable doubt. Irrespective, we will not substitute our judgment for that of the jury where the verdict finds substantial support in the evidence. State v. Wallace, 83 Ariz. 220, 319 P.2d 529. Although the evidence is almost entirely circumstantial, such is competent in a criminal case. Holder v. State, 31 Ariz. 357, 253 P. 629. If it excludes

every reasonable hypothesis of innocence, it is sufficient to sustain a conviction. Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141, 125 A.L.R. 3.

■ Specific objection is directed to a number of instructions given by the trial court. Those instructions relating to defendant's good character, the court's definition of an accident, possibility of deceased contributing to her own death and pertaining to the testimony of a convicted felon, were all requested by defendant. We will not consider them as grounds of error. State v. Serna, 69 Ariz. 181, 211 P.2d 455.

■ It is urged that the trial court erred in failing to give instructions limiting the use of certain testimony. No request was made to the court below for such limiting instructions. Failure to do so constitutes a waiver of the right thereto. State v. Polan, 80 Ariz. 129, 293 P.2d 931; Sullivan v. State, 47 Ariz. 224, 55 P.2d 312.

■ Defendant further complains of certain other instructions. It is an accepted rule of law that appellate courts will only consider such questions as were raised at the trial with respect to errors or omissions in the giving of instructions. 5 Wharton, Criminal Law Procedure, § 2097, Page 265 (1957). The rule stated by Wharton is the accepted rule in this jurisdiction, Rule 272, Rules of Criminal Procedure, 17 A.R.S. Rule 272 provides:

"The law of evidence and the law relating to instructions to the jury in civil actions shall apply to criminal actions except as otherwise provided."

Rule 51 of the Rules of Civil Procedure, 16 A.R.S., provides in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Here, in each instance of claimed error as to motive, penalty, and criminal negligence, no objection whatsoever was made in the court below. Patently the complaints as to instructions are without merit.

■ It is also urged that certain instructions were confusing but we think that the instructions, when read as a whole, are comprehensive and fair to the defendant. It is of course the rule that instructions must be read as a whole and not piecemeal. State v. Parsons, 70 Ariz. 399, 222 P.2d 637; Browning v. State, 53 Ariz. 174, 87 P.2d 112. Moreover, if from an examination of the instructions they are substantially free from error an assignment predicated upon an isolated paragraph which, standing alone might be misleading, will be given no weight. State v. Singleton, 66 Ariz. 49, 182 P.2d 920; Davis v. State, 41 Ariz. 12, 15 P.2d 242.

■ It is claimed that certain actions of the County Attorney during the course of the trial constitute error. Here again as to those matters which were not objected to by the defendant at the trial, no predicate for an appeal now exists. State v. Eisenstein, 72 Ariz. 320, 235 P.2d 1011. In this category fall the exhibition of a semi-nude picture of the victim to the jury, the cross-examination of defendant concerning his marriage to Frances Evans prior to the final date of his divorce from a former wife and the reference to a fugitive warrant involving the defendant. A trial court must be given the opportunity to correct the asserted error before a court of appeals will listen to a plea that an injustice has been perpetrated.

■ During the County Attorney's final argument to the jury defendant objected to this statement:

"Counsel for the defendant, and with the greatest of respect for him, is trying to influence you people in your intelligent thinking, trying to convince you that an insurance company has a special pecuniary financial interest in this case. I want to tell you people something on this jury: When we have a supervisors meeting next month—this is June—and it will be the first Monday in July—I am going to have to account for some money spent for Gila County, and I am ashamed to say what the figure will be. I have signed a half a dozen demands today on our County of Gila in this case for witness fees and expenses, and I don't want to hear anybody ever say that an insurance company—American Casualty Company or the Home Indemnity Company has ever spent one penny in this case because that is a black faced lie! I say that Gila County is proud to spend money on this jury case because this man is guilty, and he knows it!"

The objection was in this general language, without specifying either the offensive portion or the reason:

"Your Honor, may we make our objection on this and the last remarks of counsel."

If we assume that the strict letter of the language used is beyond the scope of relevant argument, it was plainly invited by the conduct of defense counsel and was retaliatory. From time to time defense counsel made these statements in his argument to the jury:

"First they come in here because they know there is big insurance money,"—"Of which I don't blame them for. That's fine. The people of Globe ought to have it. I'm all for it because it gives you a little more publicity." "It's a fine thing, and in that respect I don't—but I don't like to see any of you people become the tools of

an insurance agency that wants to evade the payment of their just debts.

\* \* \* \* \* \*

"Frankly, this is an insurance case, and there is big money involved; but let's not get an insurance case mixed up with a murder case. \* \* \*

\* \* \* \* \* \*

"Let's look at the other side of the proposition. What does the insurance company have to—what do they have to lose or gain by having this man brought here? What part have they played in this case? Have you ever before in your lifetime seen displayed before you such a fabulous expenditure of money? You people know what things cost, what it costs to bring witnesses, what it costs to get the type of evidence they have, and had—".

The County Attorney's remarks were provoked by the remarks of counsel for the defendant. When so provoked, they are not grounds for reversal. Post v. State, 41 Ariz. 23, 15 P.2d 246.

▮ Defendant urges that the case of State v. White, 56 Ariz. 189, 106 P.2d 508, 510, stands for the proposition that a defendant has not waived his right to object to matters in the closing argument if a "motion for a correction of an error is made to the court in which it was committed." Defense counsel apparently interprets this to mean that as long as the issue is dis-

cussed in a motion for a new trial no objection need be presented to the trial court. We do not so interpret the White decision. The last sentence of State v. White, in speaking of a "motion for a correction of an error", means only that an objection must be lodged either during the final argument of opposing counsel or at the completion of the final argument. It does not mean that the objection may be omitted entirely and brought up in the motion for new trial. The long standing rule of this court, Blackburn v. State, 31 Ariz. 427, 254 P. 467, that any objection to remarks of counsel should be offered at the time the statements are made so that the lower court may instruct the jury to disregard the comments was not modified by State v. White.

▮ Defendant objected to the admissibility of a stick labeled "Exhibit K", which was discovered under the hood of the rented car several days after it had been removed from the water. As stated, chemical examination of the grease found on this stick revealed that it matched samples taken from engine parts on the vehicle. The state theorized that this stick had been so placed by the defendant as to accelerate the motor. It was further argued that defendant placed the automatic transmission in a forward gear while the motor was being accelerated by the stick thereby causing the vehicle to go off the road and into the water. The stick was properly identified at the time of its discovery and a proper foundation was

set prior to its admission. Although it is circumstantial evidence, the stick forms an integral part of the State's theory concerning the commission of the crime. It was properly admitted and its evidentiary weight was for jury determination. State v. Betts, 71 Ariz. 362, 227 P.2d 749 and Holder v. State, 31 Ariz. 357, 253 P. 629. Also: Lenord v. State, 15 Ariz. 137, 137 P. 412.

 During the course of the trial, in an attempt to prove that the deceased could not operate a motor vehicle, a brother of deceased was asked whether he had ever seen his sister drive a car. The question was objected to in this language:

"We object to the entire line of interrogation, and not only what they intend to prove because it is incompetent in the first instance, but the manner in which they are attempting to do it by means of innuendo."

In the course of the subsequent argument to the court, counsel for defendant said:

"If he were referring to what her habits were, it would be different."

Thereafter the prosecuting attorney propounded the following question to the witness without objection:

"Q. Was it common family knowledge in your family, in the Brasse family about your sister's habit of driving? A. Yes.

"Q. Did she have a habit of driving automobiles? A. No sir."

Manifestly the question was asked without objection from counsel and at his instigation. Error may not be predicated thereon.

 Subsequently a sister and daughter of deceased testified along somewhat similar lines. Only the sister's testimony will be quoted as it amply demonstrates the position of the court and counsel at the trial.

"Q. Now I will ask you whether or not among the members of her family, Frances had a reputation, that is a habit of driving an automobile?"

Counsel for defendant then objected on the ground "that the reputation of the decedent was not an issue" and that "no proper foundation is laid for that type of question", it being urged that what happened prior to September 25, 1957 and the date of the offense, would be incompetent. The County Attorney reframed the question in this fashion:

"Q. Was it common knowledge among the members of your family as to her driving an automobile?"

To this question the same objection was made, which was overruled by the court. To the question the witness answered:

"A. Yes."

and to the further question:

"Q. And what was that common knowledge?"

the witness answered, over the same objection:

"A. All of them knew that she could not drive."

It is apparent that the question was improper. Proof of the decedent's inability to drive an automobile cannot be established by what was commonly known among the members of the family for the reason that there is here no permissible exception to the hearsay rule. However, it is equally apparent that the basis for the objection was not an assertion of hearsay. An objection to the admission of evidence must state the reason and if it is not objectionable on the ground stated, it is not error for the court to admit it, even though there might be some other proper reason for its rejection not raised by the objection as made. Sullivan v. State, 47 Ariz. 224, 55 P.2d 312. For the same reason the argument now advanced that this was negative testimony and hence without probative value will not be considered by this court.

■ Defendant's argument that no proper foundation was laid is also without merit. Here the ultimate fact to be determined was whether defendant's testimony that his wife was driving the car at the time of the accident was true. The correct test laid down by McCormick on Evidence, § 152, page 318 (1954), is whether the testimony renders the desired inference more probable. As stated in United States v. Pugliese, 2 Cir., 1945, 153 F.2d 497, 500:

"Its relevancy did not, and indeed could not, demand that it be conclusive; most convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the mind of a fair minded person. All that is necessary, and all that is possible, is that each bit may have enough rational connection with the issue to be considered a factor contributing to an answer."

As we said in State v. Thomas, 78 Ariz. 52, 275 P.2d 408, the objection of remoteness goes to the weight of the evidence rather than to its admissibility. To exclude evidence merely because it tends to establish a possibility rather than a probability would produce curious results not heretofore envisioned.

■ Finally, defendant argues that the court erred in giving what has become known in this jurisdiction as the Voeckell instruction. This instruction was given initially by the court at the time that it gave its original instructions to the jury on Saturday, June 14, 1958. Thereafter, the jury still not having arrived at a verdict on Sunday, June 15, the instructions were re-read to the jury. On Monday, June 16, at 2:30 P.M. the jury returned with its verdict.

It is argued that the conviction in this case is controlled by the decision in State v. Thomas, 86 Ariz. 161, 162, 342 P.2d 197. The decision in State v. Thomas was announced July 20, 1959, over a year after the giving of the instructions in this case. Although the Voeckell instruction had been approved as technically correct in several opinions of this court, State v. Voeckell, 69 Ariz. 145, 210 P.2d 972, State v. Lubetkin, 78 Ariz. 91, 276 P.2d 520, State v. Craft, 85 Ariz. 143, 333 P.2d 728, we reversed State v. Thomas with directions to grant a new trial for the reason that:

"* * * under the salient facts recited (it) could and did infer to the jury the court's anxiety for it to arrive at some verdict." 86 Ariz. 166, 342 P.2d 200.

The situation in this case is entirely different. There is nothing from which the jury could have inferred that the court was anxious for a verdict. When we said in the Thomas case that its

"* * * use shall no longer be tolerated and approved by this court." 86 Ariz. 166, 342 P.2d 200.

we did not say that it was in every instance grounds for reversible error. We conceded that a close reading and study of the instruction sentence by sentence did not reveal any misstatements of law, and we also said "when and wherever its use is called into question it must stand or fall upon the facts and circumstances of each particular case." We disapproved of its use for the reason that "it now appears that its continued use will result in an endless chain of decisions." We affirm our ruling in the Thomas case in every respect and repeat that we strongly disapprove of the use of the instruction.

Finding no grounds for reversible error, the judgment of the court below is affirmed.

PHELPS, BERNSTEIN, and LESHER, JJ., and WARREN L. McCARTHY, Judge of Superior Court, concurring.

NOTE: UDALL, J., having disqualified himself, the Honorable WARREN L. McCARTHY, Judge of the Superior Court of Maricopa County, Arizona, was called to sit in his stead and participate in the determination of this appeal.