425 P.2d 850

**STATE of Arizona, Appellee,**
v.
**Jack KELLY, Appellant.**
**No. 1 CA–CR 83.**

Court of Appeals of Arizona.
April 5, 1967.

Rehearing Denied May 4, 1967.
Review Denied May 23, 1967.

Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, Phoenix, by Grant Laney, Deputy Public Defender, for appellant.

Robert H. Carlyn, Phoenix, amicus curiae.

STEVENS, Judge.

In a jury trial defendant was found guilty of each of two counts charging him with the crime of theft by false representation. There were two informations against the defendant numbered 38279 and 38280. Each information contained two counts, the first being "theft by false representation" and the second being "obtaining money by false pretenses". The cases were consolidated for trial and were given the same number on appeal. At the preliminary hearings and trial, defendant was repre-sented by counsel of his own choosing. When defendant filed notice of appeal in forma pauperis, the Public Defender was appointed to represent him. The defendant questions the sufficiency of the informations and the verdicts.

Count Two in both informations was dismissed at the close of the State's case. Count One of the first information charges in part that the defendant "did wilfully, knowingly and designedly by false and fraudulent representation or pretense, defraud Dan Kokanovich of the sum of $2,000 in violation of Secs. 13–661, 13–663 and 13–671 A.R.S." Count One of the second information contains the same language except the victim was Dick B. Roach and the sum of money was $8,000. Defendant claims that the informations were defective in that they did not charge the commission of a public offense. He alleges that all of the necessary elements of the offense were not pleaded in the informations or set out in the verdicts. More specifically, it is claimed by the defendant that the County Attorney did not allege that the victims "believed the pretenses to be true and relied upon them and by reason thereof parted with his property."

Subsections A and B, Rule 115, Rules of Criminal Procedure, 17 A.R.S., provide:

"Charging the offense

A. The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

1. By using the name given to the offense by the common law or by a statute.

2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice

of what offense is intended to be charged.

B. The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

Based upon the language of the above rule, the wording of the informations is sufficient to charge the commission of a public offense. The informations comply with all three methods set forth in Rule 115. The statutory name of the offense is designated in the caption of each of the informations as "theft by false representation". The definition of the offense is sufficiently stated in the body of the informations. Finally, the informations refer to the statute creating the offense charged.

■ In addition to the compliance with Rule 115, the elements of the crime were put before the jury by the testimony of the victims and the instructions of the trial court. Both victims testified that they believed the representations made by the defendant, and, in reliance upon such statements, gave to the defendant checks totalling $10,000. The trial court's instructions to the jury clearly set forth the elements necessary to constitute theft by false representation. They also instructed that the burden was upon the prosecution "to prove every element" of the crime. The instructions were discussed by the court and counsel for both sides prior to being read to the jury, and they were modified according to a suggestion by counsel for defendant. Although defendant was free to do so, he failed to object to either the form or content of the instructions. It is our opinion that the now urged insufficiency of the informations is not well founded.

Defendant further claims that the verdicts were defective in that (1) they did not name the crime of theft by false representations or state it was a felony, (2) they did not give the jury an opportunity

to find all of the elements of the offense present, and (3) they did not give the jury an opportunity to determine the value of the property taken by the defendant. Points 1 and 2 will first be considered.

The verdict in 38279 reads as follows:

"We, the Jury, duly empaneled and sworn in the above entitled action, upon our oaths, do find the defendant guilty as charged in Count I in Cause No. 38279 (as to Dan Kokanovich)."

The verdict in 38280 is identical except for the cause number and the name of the victim.

Subsection B, Rule 286, Rules of Criminal Procedure, provides that:

"A general verdict is one finding the defendant guilty or not guilty."

As authority for his position, defendant cites Kimball v. Territory, 13 Ariz. 310, 115 P. 70 (1911). In that case, the verdict specified one element of the crime of obtaining property by false representations and omitted the other essential elements of the crime. It read:

"We, the jury duly impaneled and sworn in the above-entitled action, upon our oaths do find the defendants guilty of obtaining property by false representations as charged in the indictment."

The court held the verdict to be insufficient to sustain the judgment of conviction. The verdicts in the present case did not attempt to state any of the elements of theft by false representation. This fact alone can distinguish the cases.

In Holder v. State, 31 Ariz. 357, 253 P. 629 (1927), the information charged:

"That the said Watt Holder did then and there willfully, unlawfully, and feloniously alter the brand upon a certain two year old steer, the personal property of Richard W. Bullard, with the intent to feloniously convert the same to his own use."

The following verdict was returned:

"We, the jury, duly impaneled and sworn in the above-entitled action, upon our

oaths do find the defendant guilty of felony, to wit, altering a brand."

The verdict was attacked as being a special verdict which, within the rule of Kimball v. Territory, did not supply all the essential elements necessary to sustain a judgment of conviction. The court stated:

"We argree that the general principle of law is that a special verdict must be in such language that it is an express and unequivocal declaration that the defendant has done everything necessary to constitute the particular offense charged, and that nothing short of this can stand. On the other hand, it is equally true that no particular language is necessary in a general verdict. If it is so worded that the only reasonable conclusion which can be drawn from it is that the defendant was guilty as charged in the information, it is sufficient. * * * It is a general rule of law that we should look to the information to determine whether a verdict is sufficient."

The court also stated:

"We think it would be hypertechnical to say that, when a jury finds a defendant 'guilty' and adds words describing unmistakably the crime charged by the information, the verdict is void, even though the words of description are not as apt as a careful lawyer might use."

The court, in affirming the judgment of conviction, closed by stating:

"Anything in the Kimball case inconsistent with this conclusion is expressly overruled."

In Tate v. State, 56 Ariz. 194, 106 P.2d 487 (1940), it was held:

" * * * if the verdict is a general one, it contains all the elements of the offense charged."

▮ The clear and obvious intent of the jury in the present case was to bring in general verdicts. The language following the word "guilty" does not destroy the effect of such verdict, but merely indicates an effort by the jury to identify the crime of which defendant was found guilty. The jury was unmistakenly referring to the two informations charging the defendant with the crime of "theft by false representation."

▮ We are unable to agree with the defendant's contention that the verdicts are defective because they do not contain the graveness of the crime. It should be of no concern to the jury whether the accused is charged with a felony or misdemeanor. Its responsibility is to determine guilt or innocence. Also, the informations stated that the crimes were felonies, and the verdicts refer to the informations and all of the facts contained therein.

As to the question of the jury's opportunity to determine the value of the property, the earlier cases were decided under Section 972 of the 1901 Penal Code, which provided:

"Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty."

In McLane v. Territory, 8 Ariz. 150, 71 P. 938 (1903), the defendants were charged in an indictment with the crime of grand larceny in stealing four head of cattle of the aggregate value of $60. The jury found the defendants "guilty as charged in the indictment." The judgment of conviction was reversed because the degree of the crime was not stated in the verdict as required by Section 972.

▮ Section 972 of the 1901 Penal Code and other similar statutes are omitted from the Arizona Revised Statutes. The subject matter of these statutes is now found in Rule 292, Rules of Criminal Procedure, 17 A.R.S., which provides:

"If the indictment or information charges an offense which is divided into degrees without specifying the degree, the jurors, if they convict the defendant, shall make it appear by their verdict of which degree of the offense they find him guilty. If the indictment or information charges a particular degree, a verdict of guilty

which does not specify a degree is a conviction of the degree charged."

According to this rule, the verdicts are valid if the informations specify the degree of theft.

At the time of these crimes, the taking of property valued at $50 constituted grand theft. Defendant received three checks from his victims. They were in amounts of $500, $1,500 and $8,000, all substantially over $50. By stating these sums, the informations specified the degree. The defendant either took the checks or he did not. And, he either took all of the money or none of it. The jury in its verdict found that he took the checks of the amounts stated in the informations.

The Court feels compelled to point out that the defendant had adequate opportunity to make a timely objection to the form of the verdicts. This opportunity was made available when the trial judge and counsel discussed the verdicts out of the jury's presence. There were no objections.

The verdicts are in proper form, and are sufficient to convict the defendant of the crimes charged.

After the briefs of the Public Defender and The Attorney General had been filed, the defendant sought and was granted leave to file his own memorandum in support of the appeal. He presented two basic questions:

First, that he was not present at the time the verdicts were received and second, that he was not adequately represented by an attorney at the time of sentence or on appeal. This Court, without any implication as to impropriety of the representation of the defendant on appeal by the office of the Public Defender, requested that Robert H. Carlyn, a member of the Bar of this City, examine the record and report his conclusions to the Court. An excellent analysis of the record has been received from Mr. Carlyn.

The trial commenced on 25 June 1962 and the case was submitted to the jury at 10:30 in the morning of 26 June.

Throughout the proceedings to this point, the defendant was present in person and with his privately retained attorney. The jury reached its verdicts promptly. The reporter's transcript discloses that at 11:30 a. m. the jury was in the box in the courtroom and announced to the court that it had reached its verdict. The trial judge then observed:

"THE COURT: I believe we should show the fact that the defendant is not present and that the Court has been waiting for the presence of the defendant for the last, approximately, forty-five minutes. The Court proposes to proceed at this time in the absence of the defendant because the Court is satisfied that he voluntarily absented himself, so I am ordering that we proceed in his absence, unless there is some objection from counsel."

No objection was urged by counsel for the defense and the Deputy County Attorney stated:

"MR. GABUSI: If the Court please, both counsel for the State and the defendant have made a thorough search of the building and the grounds around."

The court received the two verdicts and the record further reflects:

"THE COURT: * * * Ladies and gentlemen of the jury, the last time I saw the defendant, I was coming this way and he was going that way, in his dark glasses.

"THE JURY FOREMAN: When we came down, he was standing out there (Indicating)."

The minutes of 13 December 1965 disclose that the defendant was then in custody in Maricopa County and a time for sentence was fixed and continued to 13 January 1966. On 13 January he was sentenced and we have been furnished with a reporter's transcript of these proceedings. (It is noted that the minutes in Cause No. 38279 reflect the date of 12 January, the minutes for Cause No. 38280

reflect the date of 13 January and the reporter's transcript reflects the date of 13 January.)

The sentencing was handled by Judge McFate, one of the resident judges for Maricopa County, in that the trial judge had assumed his new duties as a Judge of the Court of Appeals, Division Two. At the time of sentencing there were present the defendant's own retained attorney, the one who defended him at the trial, and a Deputy Public Defender other than the Mr. Laney who prepared the brief on appeal. Inquiry was made by the court and the record reflects the following:

"THE COURT: Is there any reason why you were absent when the jury returned its verdict? Let me ask you that first.

"MR. KELLY: Well, I presume—

"THE COURT: Is there any reason why you were absent when the jury returned its verdict? Let me ask you that first.

"MR. KELLY: That is a matter Your Honor, that involves other persons and I don't care about bringing someone else into it.

"THE COURT: You wouldn't care to tell the Court at this time the circumstances under which you absented yourself?

"MR. KELLY: Well, that involves other persons, Sir, and unless I am required to I don't care to.

"THE COURT: I won't require you. I think the burden is on you. If you have any cause to show why you should not be sentenced, you may say so at this time."

Rule 231 of the Rules of Criminal Procedure, 17 A.R.S. specifies that:

"A. In a prosecution for a felony the defendant shall be present:

\* \* \* \* \* \*

7. At the rendition of the verdict.

"B. If the defendant is voluntarily absent, the proceedings provided by this Rule, except those in paragraph 1 and 2 of subsection A, may be had in his absence if the court so orders."

We hold that there was no error in the receipt of the verdicts in the absence of the defendant and that the sentencing was properly referred to Judge McFate. From a review of the record at the time of sentencing, we find no inadequacy of the defendant's representation and extensive statements by the defendant on his own behalf. The trial court was fully informed insofar as the defendant was willing to inform the court. The record reflects that the defendant is a man of some experience in the criminal law.

Mr. Laney, now Deputy Public Defender, who is charged with the appellate responsibilities of the office, was a Deputy County Attorney at the time of the filing of the informations. His capacity in the office of the County Attorney was essentially supervisory. His examination of the records refreshed his recollection and he advised the Court that he authorized the filing of the complaints out of which the informations arose, the authorization being based upon the recommendation of a different member of the staff. These facts were disclosed to the defendant who, nevertheless, after the sentence, requested that the Public Defender handle the appeal. From an examination of Mr. Laney's brief in support of the appeal, we are unable to find any inadequacies of representation on the appeal. Nevertheless, as a precaution, we sought the aid of Mr. Carlyn.

We have carefully examined the record pursuant to the mandate of Section 13–1715 A.R.S. and we find no reversible error.

Both cases are affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.