456 P.2d 368

The STATE of Arizona, Appellee,

v.

Calvin BROWN and Willie Brown,
Appellants.

No. 1672.

Supreme Court of Arizona.

In Division.

June 27, 1969.

Rehearing Denied July 15, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Shuch & Cheche, Phoenix, for appellants.

STRUCKMEYER, Justice.

Appellants were convicted of the crimes of robbery and burglary by mechanical means on October 1, 1965. From the conviction and sentence they appeal.

During the early morning hours of June 12, 1965, two men held Rupert M. Paty, purchasing agent for the Western Janitor Supply, Inc., at gun point while they robbed its premises. At approximately 1:30 a.m. of that morning, two liquor enforcement agents, Martin and Clegg, of the Arizona State Liquor License and Control Department were seated in an automobile at Second Street and Buchanan in the City of Phoenix, and with the aid of high power binoculars were observing a suspected illegal liquor operation. Appellants appeared on the scene and were observed by the agents. Agent Martin saw by means of the binoculars that they were carrying a rifle, rifle case, a box, a long flashlight, several unidentified objects and what appeared to be a bottle of liquor.

At the trial on cross-examination, Agent Martin testified that the appellants were stopped because of the time of night and the suspicious nature of the objects they were carrying. Martin stated he and his partner wanted to determine if the bottle did in fact contain liquor, and if so, what were the ages of appellants. Appellants disappeared from the agents' field of vision for about thirty seconds and when they reappeared they no longer had the objects previously carried by them, but the agents found all of the items in two piles nearby. In addition to a loaded pistol and the rifle, the piles also contained screwdrivers and a hammer.

Appellants were placed in the rear of the agents' car and taken to a police station. Agent Martin testified that before and after placing a suspect in a car, the rear of the car is thoroughly inspected to ascertain whether any objects have been accidently dropped or deliberately hidden. A search of the car after appellants were removed revealed a pair of brown cotton work gloves and a leather handled brass letter opener. At the time appellants were stopped for questioning, the agents were unaware that a burglary had just been committed a short distance away. All of the items discovered in the two piles and the leather handled letter opener were identified as having been taken during the course of the robbery of Western Janitor Supply, Inc. and from Paty who lived on the premises. Police scientific laboratory tests linked the tools to the safe which had been broken open.

■ Shortly after apprehension of the suspects, Paty went to the police station and from a room containing half a dozen men he identified appellants. He stated both appellants wore gloves during the course of the offense. Appellants did not testify at their trial and the record does not show that they either requested or objected to the giving of an instruction relative to their failure to testify. They now urge that the customary instruction given by the court constitutes reversible error. We do not agree.

In State v. Norgard, 103 Ariz. 381, 442 P.2d 544, we held:

"* * * we might point out that the errors in the instruction were not complained of at the trial, but are being raised for the first time on appeal. We have held many times that this Court will only consider such questions as were raised at trial with respect to errors or omissions in the giving of instructions. unless such claimed error is so fundamental that it is manifest the defendant did not receive a fair trial. State v. Johnson, 99 Ariz. 52, 406 P.2d 403; State v. George, supra [95 Ariz. 366, 390 P.2d 899]; State v. Evans, supra [88 Ariz. 364, 356 P.2d 1106]." 103 Ariz. at p. 383, 442 P.2d at p. 546.

■ Appellants also allege that it was prejudicial error to admit evidence of a "police lineup identification". No police lineup, as that phrase is generally understood, occurred here. Appellants were reluctant to participate in a lineup, and so on the same day of their arrest they were placed in a room with several other men where Paty was brought to make an identification. There is no indication that the police suggested to Paty which of the men were the suspects. There appears to be some contradictory testimony as to whether some of the other men in the room resembled appellants but we think this is immaterial. The totality of the circumstances surrounding the confrontation were not so suggestive and conducive to irreparable mistaken identification that appellants were denied due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

We do not find that the basic rights of appellants were violated when the identification was made under the circumstances of this case. The record does not indicate that the identification was in any way unduly suggestive, even assuming that the others in the room were physically dissimilar in appearance. The record is clear and convincing that the in-court identification of the appellants was not tainted by the prior identification procedures used. See

State v. Dessureault, 104 Ariz. 380, 453 P. 2d 951.

In State v. Dessureault we said:

"We, of course, recognize that a lineup does not require individuals of absolute identical dress, size and physical characteristics. If it were possible to establish such a lineup, clearly, identification would be impossible. It is the differences which distinguish one individual from another and by which identifications are made, but where the differences are so great that only one person could, within reason, fill the description of the accused, leaving the witness with only one possible choice, the lineup itself becomes significantly suggestive and as such materially increases the dangers inherent in eye witness identification."

Paty testified he had been forced to spend almost an hour as captive of appellants and that he was certain of his identification. It is our frequently restated rule that:

" 'In order to sustain a conviction it is not necessary that the identification of the defendant as the perpetrator of the crime be made positively or in a manner free from inconsistencies. It is the function of the jury to pass upon the strength or weakness of the identification and the uncertainness of the witness in giving her testimony.' People v. Houser, 85 Cal.App.2d 686, 193 P.2d 937, at page 941." State v. Norgard, supra, 103 Ariz., at 383, 442 P.2d at 546; State v. Tafoya, (May, 1969), 104 Ariz. 424, 454 P.2d 569.

The final question for our consideration is whether the enforcement agents acted on probable cause when they stopped appellants and whether the seizure of the items taken was proper. This question has arisen many times and has been previously considered by both the United States Supreme Court and our Court. In Dessureault, supra, we quoted as follows from Wong Sun v. United States, 371 U.S. 471 at 479, 83 S.Ct. 407 at 413, 9 L.Ed.2d 441:

" '* * * It is basic that an arrest without a warrant must stand upon firmer ground than mere suspicion, see Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543—must be measured by the facts of the particular case.' "

An extended discussion of this subject may be found in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, wherein the United States Supreme Court stated:

"'* * * And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925); Beck v. State of Ohio, 379 U.S. 89, 96–97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g., Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L. Ed.2d 1688 (1960); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L. Ed.2d 134 (1959). And simple ' "good faith on the part of the arresting officer is not enough." * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers and effects," only in the discretion of the po-

lice.' Beck v. Ohio, supra, [379 U.S.] at 97, 85 S.Ct. at 229.

"Applying these principles to this case, we consider first the nature and extent of the governmental interests involved. One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. It was this legitimate investigative function Officer McFadden was discharging when he decided to approach petitioner and his companions. He had observed Terry, Chilton, and Katz go through a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation * * *." 88 S.Ct. at 1880, 1881.

The enforcement agents testified that no one other than the suspects was in the particular area where the two piles of items taken in the burglary had been placed. These items were not discovered as a result of an unlawful intrusion against appellants' persons or their property. The agents observed the suspects walk into view with the various items in their hands, saw them disappear around the corner of a building for several seconds and then as they reappeared saw them straighten up after apparently bending down, but—this time—without anything in their hands.

The enforcement agents having observed a rifle, rifle case and what appeared to be a bottle of liquor acted in accordance with probable cause as it has been defined in numerous cases when they approached and stopped the suspects. The two piles of loot from the burglary reinforced the agents' belief, as it would any reasonable man, that an offense had been committed. The actions of the appellants and the presence of various suspicious items on a deserted street at an early hour in the morning were sufficient to arouse the curiosity of trained law enforcement officers. As we have previously held in State v. Pederson, 102 Ariz. 60, 424 P.2d 810:

"* * * The existence of probable cause is determined by application of an objective rather than a subjective standard. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. Probable cause exists ' "* * * where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." ' Ker v. State of California, 374 U.S. 23, 35, 83 S.Ct. [1623] 1630, 10 L.Ed.2d 726. * * *." 102 Ariz. at page 66, 424 P.2d at page 816.

And see State v. Baughn, 104 Ariz. 240, 450 P.2d 698 and State v. Williams, 104 Ariz. 319, 452 P.2d 112. There were ample grounds to support a lawful arrest based on probable cause.

Judgment affirmed.

LOCKWOOD, V. C. J., and HAYS, J., concur.