407 P.2d 55

**STATE of Arizona, Appellee,**

v.

**Coy Virgil GOFF, Appellant.**

No. 1558.

Supreme Court of Arizona.

En Banc.

Oct. 28, 1965.

Darrell F. Smith, Atty. Gen., Norman E. Green, Pima County, Atty., Carl Waag, Deputy County Atty., Tucson, for appellee.

Peter Chase Neumann, Tucson, for appellant.

STRUCKMEYER, Vice Chief Justice.

On May 20, 1964, in Tuscon, Arizona, appellant Coy Virgil Goff shot and wounded one James Perry Turner with a .38 caliber revolver. Five shots were fired by Goff, three of which entered Turner's body. Goff was tried and convicted of the crime of assault with a deadly weapon, a felony, in violation of A.R.S. § 13–249. From the conviction and sentence he appeals.

Appellant first complains that certain statements made by him to a Tucson police officer, Detective Julian Livingston, shortly after his arrest, were inadmissible at his trial for the reason that he was deprived of the right to consult with counsel. Factually, the record does not support appellant. Detective Livingston's testimony, abstracted to its pertinent details, is:

"Well, Mr. Goff talked first. He told about an incident which had noth-

ing to do with this case to start with, and after he told of this incident he said he—

\* \* \* \* \* \*

"He said that he would—he should get an attorney. I told him that he was right, that he would need an attorney, that he could call one on the telephone \* \* \*.

\* \* \* \* \* \*

"I asked Mr. Goff if he would give us a written statement as to what happened at the bar concerning the shooting. He said he wanted to talk to his attorney before he would give us this statement. I asked him who his attorney was, if we could call him, get his attorney down there. He said he didn't want to give me the name of the attorney, so, we never did take the statement."

This testimony establishes that appellant was aware of his right to the assistance of counsel under the Sixth Amendment to the United States Constitution but chose not to avail himself of the right. Moreover, since he refused to give a written statement, it suggests that he was aware of the privilege against compulsory self-incrimination under the Fifth Amendment.

Nevertheless, appellant asserts that he had an absolute legal right at this stage to be formally advised of the rights guaranteed by the Constitution of the United States. He refers loosely to these constitutional guarantees as the rights to remain silent and to the assistance of counsel. There is not, of course, any specific provision in the Federal Constitution or law or Constitution of this state which guarantees to appellant the right of advice here claimed. There are decisions holding that the right exists (e.g., People v. Dorado, 42 Cal.Rptr. 169, 398 P.2d 361, cert. den. 381 U.S. 946, 85 S.Ct. 1793, 14 L.Ed.2d 710) and that it does not exist (e.g., People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33, cert. den. 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152). We recently examined the case of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, see State v. Miranda, 98 Ariz. 18, 401 P.2d 721, and rejected Dorado quoting and citing many of the cases adopting the opposing view. We did not conclude from Escobedo that the Supreme Court of the United States held that arbitrarily and in every instance admissions made to police officers after an investigation has become accusatory are inadmissible in evidence unless a suspect has knowingly waived his right to counsel.

█ Waiver rests on equitable principles, Schindel v. Danzer, 161 Md. 384, 157 A. 283; that is, courts will insist upon fair play between parties to litigation and in prosecutions for crimes. It is a rule of judicial policy, an outgrowth of judicial abhorrence that a person gain an unfair advantage through the aid of courts.

Pabst Brewing Co. v. City of Milwaukee, 126 Wis. 110, 105 N.W. 563. While there is an advantage to be gained by the prosecution in the introduction of an accused's confessions, admissions or incriminatory utterances at his trial, the State is not required to divest itself of every advantage. It is an advantage obtained through trickery or affirmative conduct which tends to evade fundamental rights thereby denying due process of law which is forbidden. See Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. It is the unfair advantage obtained thereby which courts will not tolerate.

■ The objective of criminal procedures is to establish rules by which the truth may be ascertained so as to determine the guilt or innocence of those suspected or charged with offenses. To that end public policy demands an unceasing and unrelenting search for the truth. That the declarations of an accused are often highly relevant to the ascertainment of the truth cannot be doubted. That there is no public policy directed against self-incrimination likewise cannot be doubted. Public policy prohibits compulsory self-incrimination. Nor does public policy necessarily require that an accused be furnished the assistance of counsel prior to arraignment on an indictment or information. State v. Schumacher, 97 Ariz. 354, 400 P.2d 584.

■ Plainly, the search for the truth must yield when it clashes with constitutional rights. The truth may not be coerced. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. It must not be the product of an unreasonable search or seizure. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The assistance of counsel may not be denied after the accusatory stage has been reached. Escobedo v. State of Illinois, supra. But the public policy, implicit in the search for truth, is not to be unnecessarily frustrated; and unless a record were to disclose that the State, in the acquisition of evidence, has taken such an advantage that a defendant is deprived of a fundamental right, justice can be best served by the admission of all relevant voluntary declarations by which the truth may be determined.

■ There may be circumstances where an accused or even a suspect should be immediately advised as to his constitutional rights. We stress again that those suspected or accused of crimes should be fully advised at the earliest opportunity of all their rights so that there may be no doubt as to whether the awesome weight of the law has taken an unconscionable or unfair advantage. See State v. Preis, 89 Ariz. 336, 362 P.2d 660. We do not think, however, that incriminatory utterances should be barred for use in courts where, as here, a defendant is a mature, able-bodied man

engaged in business, having the appearance, as a minimum, of at least ordinary intelligence and there has been no overreaching by trickery or an affirmative course of conduct on the part of public officials which tends to deny the effective protection of a provision of the Constitution of the United States.

 It is urged that this cause should be remanded to the superior court for a hearing to determine whether appellant *intelligently* waived his rights both to counsel and against compulsory self-incrimination on analogous principles to Jackson v. Denno, supra, and State v. Owen, 96 Ariz. 274, 394 P.2d 206. Appellant in his testimony denied that he made the statements testified to by Detective Livingston. There was, accordingly, no possible issue for the trial judge to determine, State v. Simoneau, 98 Ariz. 2, 401 P.2d 404, and no factual question for the jury to decide except as to whether the statements attributed to the defendant were or were not made. Where statements made by an accused are plainly voluntary and no evidence is introduced or offered that they were not knowingly made, it must be assumed that they were intelligently made. We reject appellant's position in this respect as being without merit.

 Appellant assigns that the trial court erred by not instructing the jury on its own initiative that the jurors could disregard the appellant's statements to De-

tective Livingston if they found that the appellant was not afforded a right to counsel or was not apprised of the fact that he could remain silent. The answer to this is, of course that appellant was afforded an opportunity to procure counsel and that public policy does not require more than that appellant be shielded from compulsory self-incrimination or unknowing incrimination under circumstances as have been disapproved by the United States Supreme Court in Massiah, supra.

 Appellant complains that the trial court committed error in excluding the testimony of a witness, a mathematics instructor at the University of Arizona. The court interrupted the examination of appellant's witness by expressing doubts as to whether a hole found in a refrigerator in appellant's kitchen had been sufficiently identified as a bullet hole. Appellant made no offer of proof as to what testimony he sought to elicit from the witness or how, in any manner, it would have impeached or discredited the State's case or supported appellant's case. If we now assume that the *hole found in the refrigerator was made* by one of the five shots, we are still left with no clue as to what relevant fact the witness's testimony would have established. An examination of the record fails to disclose testimony from which it could be inferred where precisely each shot was fired and hence it does not appear that there is any evidence which would be inconsistent

with a shot hitting the refrigerator. Since we are unable to understand how the exclusion of the testimony was prejudicial to appellant, we conclude that the ruling, if erroneous, was not prejudicial.

■ Appellant finally complains of the refusal of the trial court to grant his motion for a new trial based upon newly discovered evidence. The record shows that Turner testified as witness for the State as to the details of the shooting. At the time of the trial he was confined in the Pima County Jail awaiting extradition to California on two felony charges. After the trial, he gave an affidavit in which he described the shooting as "truly accidental" and that in no way was appellant at fault. At the hearing on appellant's motion for a new trial it was established that the appellant, while awaiting transfer to the State Prison at Florence, Arizona, gave $100 to Turner. A subsequent affidavit by Turner was filed by the State with the court. In it Turner stated that his first affidavit was also motivated by fear of the defendant. We think it too plain to require further discussion that under these circumstances the trial court did not abuse its discretion in failing to grant appellant's motion for a new trial.

Judgment affirmed.

LOCKWOOD, C. J., and BERNSTEIN, UDALL and McFARLAND, JJ., concurring.