408 P.2d 418

**The STATE of Arizona, Appellee,**

**v.**

**Henry TAYLOR and Mitchell Darby, Appellants.***

**No. 2 CA–CR 20.**

Court of Appeals of Arizona.

Dec. 6, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's

No. 1527. The matter was referred to this court pursuant to A.R.S. § 12–120.23.

**316**

Darrell F. Smith, Atty. Gen., Norman E. Green, Pima County Atty., Carl Waag, Deputy County Atty., for appellee.

Royal & Carlson, by H. Wesley Carlson, Tucson, for appellant, Henry Taylor.

Manuel H. Garcia, Tucson, for appellant, Mitchell Darby.

MOLLOY, Judge.

Henry Taylor and Mitchell Darby were convicted of first degree burglary. At a hearing held before commencement of trial, throughout the course of trial, and at the time appointed for sentencing, the defendants raised various motions, all of which were denied by the trial court. This is an appeal from the denial of motions to suppress evidence, to declare a mistrial, for directed verdicts, to dismiss, for a new trial, and to delete references made in written and oral statements.

■ On appeal from a conviction, the appellate court is required to view the evidence in a light most favorable to the state, State v. Rivera, 94 Ariz. 45, 381 P.2d 584 (1963), and such a view reveals the following facts.

A police officer in a patrol car stopped an automobile with a defective taillight at 2:30 a. m. The driver, Taylor, 19 years of age, stepped from the auto and met the officer, who explained to Taylor that the law required proper taillights (A.R.S. § 28-925). Routinely, the officer then approach- ed Taylor's auto and looked inside. He may have used his flashlight. Within the auto he observed Darby, 18 years of age, and another young man not involved in this action. On the floor of the rear seat, the officer saw two new Delco automobile batteries in unopened cardboard containers, one longer and narrower than the other. The officer also saw seven to eight packages of three different brands of cigarettes in the back seat. When inquiry was made as to the ownership of the batteries, the reply given was that one battery belonged to each of the passengers, and that they had been purchased " * * * from a Richfield station * * * on the south side * * *" from a service station attendant named "John." Asked about the cigarettes, each of the defendants maintained that the other person must have brought them into the car. The officer filled out a field interrogation card, requested and was granted permission by Taylor to get into the car and look more closely at the batteries, and radioed the police station for a records check of the defendants and for a burglary report. Both resulted in negative responses. After two or three additional police units arrived, a search of the defendants' persons and of the trunk of the car was conducted. The opening of the trunk was performed by Taylor at the request of the officers. Search of the persons disclosed a roll of pennies and a "lettuce" knife. A used battery was located in the trunk.

All three batteries were later identified as having been taken from the Richfield service station which the defendants were charged and convicted of burglarizing in the lower court. The three brands of cigarettes were of the same three brands as cigarettes taken from this same station.

Additional questioning at the scene failed to satisfy the officer. No explanation was offered by the defendants as to why they had the batteries in question nor as to why they were out in the early hours of the morning. The officers informed the defendants that although charges could be filed against them, the officers would prefer

that the defendants voluntarily accompany them to the station for further investigation. This they agreed to do. Taylor drove his own car to the station with police units in front and behind. Darby and the other occupant were driven in the police units. Taylor's car was parked on the police ramp and Taylor and Darby were questioned further at the station. At about 4:30 a. m.— two hours after being stopped for a defective taillight—the burglary of the Richfield station was reported and Taylor and Darby were formally arrested. No citation was ever issued for the taillight infraction.

At about 9 a. m. the same morning Taylor and Darby were taken from the county jail to the detective bureau for interrogation. They were separately questioned. Taylor made an oral confession which was later reduced to writing and signed by him. Confronted by this written statement, Darby orally agreed with Taylor's statement but declined to make a written statement himself. Later the same day Taylor and Darby were arraigned before a magistrate.

The trial in the lower court and this appeal revolve largely around whether the batteries and cigarets were obtained by means of an illegal search and seizure.

The question of searches and seizures has received considerable—perhaps inordinate—attention since the historic decision of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and appellants herein, defendants below, rely heavily upon that case.

 The Mapp decision requires the exclusion in state courts of all evidence secured by means of illegal search and seizure. The Arizona Supreme Court, in State v. Quintana, 92 Ariz. 267, 376 P.2d 130 (1962), specifically acknowledged the applicability of the Mapp rule in Arizona courts, but propounded:

"Nevertheless, the test regarding the legality of a search and seizure is whether it was 'reasonable' under the circumstances, and the courts have held that circumstances beyond the fact that there was an arrest might justify a search and seizure which otherwise would be unreasonable." (Emphasis added)

92 Ariz. 267, 269, 376 P.2d 130, 131 (1962)

See also State v. Baca, 1 Ariz.App. 16, 398 P.2d 924 (1965).

 It is universally recognized that a search and seizure incident to a lawful arrest, or lawfully conducted under the authority of a valid search warrant, is reasonable. It is similarly accepted that a search inspired by exceptional circumstances is likewise reasonable. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1946); Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487 (1959); State v. Quintana, supra, and cases discussed therein. The mobility of vehicles has frequently been considered in requiring less for a finding of exceptional circumstances rendering a search reasonable. Busby v. United States, 296 F.2d 328 (9th Cir. 1961); State v. Baca, supra.

 As summarized in 79 C.J.S. Searches and Seizures § 8, pp. 787–788:

"What constitutes a reasonable or unreasonable search and seizure in any particular case is purely a judicial question, determinable from a consideration of the circumstances involved, including the purpose of the search, the presence or absence of probable cause, the manner in which the search and seizure was made, the place or thing searched, the character of the articles procured, and the nature and importance of the crime suspected."

In State v. Quintana, supra, a suspicion grounded upon the evasive answers and nervous demeanor of the driver of an auto exceeding the speed limit late at night, was held to be sufficient to label the attendant search as reasonable. The Arizona Supreme Court, in fact, commended the officer by stating that it was the "* * * reasonable thing for the officers to have done

**318**

upon having such suspicion. * * *" 92 Ariz. 267, 269, 376 P.2d 130, 131 (1962).

▮▮▮▮ "Reasonableness" is a matter concerning which conceptual generalities are of little help. No pattern of behavior may unequivocally be said to be reasonable under all conceivable circumstances. This court is inclined to give great weight to the conclusion of the trial judge in the matter, and is in agreement that the conduct of the officers in searching defendants and the automobile was reasonable under the circumstances. State v. Quintana, supra; 5 Am. Jur.2d 735, Arrest §§ 44–49. And, although we recognize that a lawful arrest for a minor traffic violation does not, in and of itself, automatically render constitutional any contemporaneous search and seizure, State v. Quintana, supra, nevertheless where, as here, the search was reasonable, it is not rendered unreasonable, and hence unlawful, by subsequent occurrences.

Appellants place much significance on the fact that they were detained for two hours before being formally arrested for burglary, and to the fact that for that period their detention was based on nothing more than the suspicions of the officer. The state counters that defendants consented to the detainer and that if there was an arrest, the same was based on reasonable grounds.

▮▮▮▮ Although we recognize that it is possible to waive constitutional guarantees by consent (State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963); State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963)), we also are cognizant of the fact that conduct performed at the request of police officers often lacks that genuine voluntariness contemplated by an effective waiver of a precious right.

▮▮▮▮ In the opinion of this court the question of whether the defendants were arrested at 2:30 a. m. or 4:30 a. m. is immaterial to the question before us: whether the trial court erred in denying a motion to suppress evidence. Basic constitutional rights should not depend upon the technicality of when an arrest is made. We hold that the circumstances presented to the trial court were such that the court was justified in finding that the search, made at 2:30 a. m., and the seizure, made either at 2:30 a. m. or 4:30 a. m., were reasonable. We do not believe that the trial court was mandated under the facts of this case to find that the conduct of these officers falls within the category of " * * * rude invasions of privacy * * *" (81 Sup.Ct. 1694), which were condemned in Mapp.

Appellants next assert that the court erred in admitting the oral statement of Darby and the oral and written statements of Taylor, on the grounds that they were originally detained illegally, that they were not warned of their right to make a phone call or secure an attorney, or remain silent, that they were denied the assistance of counsel, and that there was an unnecessary delay in taking the defendants before a magistrate for arraignment in violation of law.

Again, a hearing was had outside the presence of the jury on the question of the voluntariness of the statements made. The objections raised on appeal were all presented to the court at that time, and all, admittedly, have a bearing on voluntariness. The court preliminarily determined that the statements were voluntarily made and could be admitted into evidence. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964); State v. Owen, 96 Ariz. 274, 394 P.2d 206 (1964); State v. Pulliam, 87 Ariz. 216, 349 P.2d 781 (1960); State v. Rivera, 94 Ariz. 45, 381 P.2d 584 (1963).

▮▮▮▮ The statements were obtained from defendants sometime between 9 and 11:30 a. m. of the morning of their arrest. Whatever might be contended concerning the defendants' status prior to the formal booking at 4:30 a. m., there can be no question that at the time the statements in question were made the defendants were lawfully detained. If their detention previously was illegal, we see no causal relationship between such detention and the statements obtained.

The defendants further contend that they were not apprised of their constitutional rights, and that their statements are therefore inadmissible.

■ We are well aware of the rule established by the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). We are also aware of the limits of applicability of the rule, State v. Miranda, 98 Ariz. 18, 401 P.2d 721 (1965), which include a request for, and denial of, an opportunity to consult with counsel, and the absence of any effective warning by the police to the suspect of his constitutional right to remain silent. In the instant case there is no evidence whatever of a request for counsel having been made or denied. The written statement taken from Taylor indicates he was advised of his right to remain silent.

Concerning the delay involved between the time of arrest and the appearance before a magistrate, A.R.S. § 13–1418 provides: ·

"An officer who has arrested a person without a warrant shall *without unnecessary delay* take the person arrested before the nearest or most accessible magistrate in the county in which the arrest occurs, and shall make before the magistrate a complaint, which shall set forth the facts showing the offense for which the person was arrested." (Emphasis added)

■ The leading case in this state is State v. Jordan, 83 Ariz. 248, 320 P.2d 446 (1958), cert. denied 357 U.S. 922, 78 S.Ct. 1364, 2 L.Ed.2d 1367, rev. denied 358 U.S. 859, 79 S.Ct. 17, 3 L.Ed.2d 93, wherein a delay of more than 24 hours was held not to constitute an "unnecessary delay." More recently, in State v. Sheffield, 97 Ariz. 61, 396 P.2d 828 (1964), it was held that a three day incarceration *before arrest* and before bringing defendant before a magistrate, even though in violation of the provision in A.R.S. § 13–1418, did not amount to a denial of due process requiring dismissal of the information where there was no showing that such delay in any way deprived defendant of a fair trial. The record before us does not establish when the defendants were brought before a magistrate. It was established that their statements were first obtained. The delay established thus ranges between 7½ and 9½ hours, depending upon when it is considered the arrest occurred. Under the above cited law, we hold that such delay does not require a suppression of the confession obtained or a dismissal of these charges.

■ The trial court concluded that the statements were voluntary, and submitted that issue to the jury for their further consideration. In this matter we find no error.

■ Each of the appellants made reference to the other in his statement admitted into evidence, and the appellants maintain that it was error for the trial court to refuse to delete such references. The contention is not convincing. Prejudice will not be presumed, Hoy v. State, 53 Ariz. 440, 90 P.2d 623 (1939), and it is not more probable that the verdict would have been different had the references been deleted, State v. Polan, 78 Ariz. 253, 278 P.2d 432 (1954), so that the court's instructions to the jury that the statement of each appellant could be used as evidence only against that appellant was sufficient. State v. Sanchez, 59 Ariz. 426, 129 P.2d 923 (1942).

The defendant Darby has assigned error in failing to direct a verdict in his favor at the conclusion of the prosecuting attorney's opening statement for the reason that such statement did not state facts to be proved sufficient to establish guilt. No law has been cited holding that it is reversible error to refuse to direct a verdict after an insufficient opening statement when sufficient proof is subsequently produced during the course of a trial.

■ The prosecuting attorney is not required to make an opening statement. Rule 255 Rules of Criminal Procedure, 17 A.R.S. Regardless of whether or not the opening statement in question detailed suf-

ficient facts to support a conviction, in the absence of any prejudice to the defendants shown, we hold it not to be error to have failed to grant defendant's motion for a directed verdict.

We have considered all of the assignments raised in this court, and conclude from the record before us that the trial court did not err in denying appellants' motions. Since, however, serious issues of individual rights and public policy have been raised, we believe it is fitting to repeat the very recent language of the Arizona Supreme Court in State v. Goff, 407 P.2d 55, decided October 28, 1965:·

"Plainly, the search for the truth must yield when it clashes with constitutional rights. The truth may not be coerced. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. It must not be the product of an unreasonable search or seizure. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The assistance of counsel may not be denied after the accusatory stage has been reached. Escobedo v. State of Illinois, supra. But the public policy, implicit in the search for truth, is not to be unnecessarily frustrated; and unless a record were to disclose that the State, in the acquisition of evidence, has taken such an advantage that a defendant is deprived of a fundamental right, justice can be best served by the admission of all relevant voluntary declarations by which the truth may be determined."

In this case, a great many man-hours of both professional and nonprofessional persons have been devoted to exploring defenses which seek the suppression rather than the relevation of truth. The record warns us that this devotion of human effort in this pursuit has not ended, for it is promised that the aid of the Supreme Court of the United States itself will be sought to remedy the evils conceived to be inherent in the conduct of the investigating officers who dealt with these defendants. The constitutional law invoked has a high purpose, to discourage encroachment upon the rights of individuals by overzealous police officers. Among its side effects, however, is the generation of vast amounts of litigation, for law laid down in high-sounding language is often difficult for a trial court to apply to particular circumstances. Conscientious counsel throughout this land, delegated the duty to defend, feel duty bound to press the almost sacred language of our highest court to its fullest meaning. As a court only one step removed from a trial court, we can only express wonderment as to whether some portion of this vast effort might be better devoted to the rehabilitation of those unable to adjust to the standards of our society, and then, with that wonderment expressed, continue to the best of our ability to apply the law as established by our higher courts to the cases coming before us.

Judgments affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.