450 P.2d 698

**STATE of Arizona, Appellee,**

v.

**James Dart VAUGHN, Appellant.**

**No. 1808.**

Supreme Court of Arizona.

In Banc.

Feb. 20, 1969.

Rehearing Denied March 18, 1969.

Darrell F. Smith, former Atty. Gen., Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Richard H. Silverman, Phoenix, for appellant.

UDALL, Chief Justice.

Defendant was convicted of robbery, with a prior conviction, and sentenced to serve 10 to 12 years in the State Prison. He appeals from the verdict and judgment of conviction.

At approximately 4:00 A.M., during the early morning hours of December 9, 1966, two Negro males pulled into a South Phoenix service station in a white 1964 Chevrolet. The passenger got out and asked the attendant for directions to the restroom, but instead went into the office. The attendant checked the oil in the car and then followed the passenger into the office. The attendant was, in turn, followed by the driver of the car. The passenger, later identified as one "Vick Blackmon", pointed a gun at the attendant and ordered him to open the cash drawer. The driver, who was wearing a bandana around the top of his head and a light colored coat pulled up around his face, took the bills—approximately 40 one dollar bills, 2 ten dollar bills and 6 five dollar bills—and shoved them into his pocket. The driver then went to the vehicle and started the engine. The passenger walked out of the office and when he saw a police "paddy wagon" approaching the station, he ran to the car and jumped in. The "paddy wagon" pulled into the station just as the suspect's vehicle was pulling out. The officers gave chase and at the same time called for assistance on their radio. The suspect's vehicle was abandoned several blocks away with a flat tire, and the two men fled on foot. The area was quickly surrounded by police officers and within minutes both Blackmon and the defendant were arrested. The specific facts surrounding the arrest of the defendant are in question.

Officer Spitler, of the Phoenix Police, testified that he was near the area where the vehicle was abandoned when he heard the pursuing officers call for assistance. He proceeded directly to the area and parked with his head lights off. He observed the defendant, a Negro male, walking very fast and turned his spotlight on him. The defendant stopped and put his hands on the back of his head. Officer Spitler approached and then conducted a search of the defendant's person, finding in his left rear pocket an identification case containing 38 one dollar bills, 2 ten dollar bills and 1 five dollar bill. When

apprehended, defendant was wearing a shirt and sweater but no coat or bandana. (Later in the morning a light blue sports coat was found in the area containing 4 five dollar bills and an Arizona application for duplicate title. The application had a serial number on it from a Honda motorcycle which matched the number on the Honda owned by defendant.) The arresting officer then put defendant in his patrol car and informed him he was under arrest for robbery.

Defendant contends that the cash taken from him at the time of his arrest was erroneously admitted into evidence at trial since it was the product of an "unreasonable search and seizure". The argument, to have merit, assumes the fact that the arrest was invalid. In State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967), we quoted the following language from Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, which we consider relevant here:

"The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant. The lawfulness of arrest without warrant, in turn, must be based upon probable cause, which exists 'where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' "

Neither the arrest nor the search were made with a warrant. Therefore we must determine whether probable cause existed for the arrest and that determination will be dispositive of the issue of the admissibility of the evidence seized in the search.

A.R.S. § 13–1403, relating to arrests without a warrant, provides:

"A peace officer may, without a warrant, arrest a person:

\* \* \* \* \* \*

"3. When a felony has in fact been committed, and he has probable cause

to believe that the person to be arrested has committed it.

"4. When he has probable cause to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it."

■ The above statute is framed to the standards laid down by the United States Supreme Court. Ker v. State of California, supra. It must, therefor, be interpreted in light of their decisions. The concept of "probable cause" was discussed in Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949), where it was said:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

\* \* \* \* \* \*

"\* \* \* Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." 338 U.S. 176, 69 S.Ct. 1311.

■ Officer Spitler was summoned to the area of the abandoned getaway car by the pursuing officers. He was parked within 200–300 yards of the abandoned vehicle. At approximately 4:05 A.M. (Friday morning), within 5 or 6 minutes after the robbery had taken place, defendant, a Negro male, was observed by Officer Spitler walking away from the vicinity of the getaway car. When the officer's spotlight went on him he threw his arms up behind his head. We are of the opinion that under those circumstances the officer had reasonable ground to believe that defendant was one of the men who had committed the robbery.

Since the arrest was valid the evidence obtained in the incidental search was clearly admissible at the trial.

Defendant next contends that the trial court committed fundamental error in failing to instruct the jury that it could consider certain exculpatory statements made by defendant only if the statements were made voluntarily and that they should reject any such statements unless they so find. The argument is based on the cases of State v. Owen, 96 Ariz. 274, 394 P.2d 206 (1964), where we said that exculpatory statements are to be given the same treatment as confessions in regard to the determination of their voluntariness, and State v. Pulliam, 87 Ariz. 216, 349 P.2d 781 (1960), where we said that regardless of whether the defendant requests it the court must instruct the jury that before considering whether a confession is true they must first determine whether it was voluntary, and that if they find it to be involuntary they must reject it.

Defendant made the statements in question to Officer Ruben Ortega. Ortega testified that he spoke in private with defendant at the city jail approximately six hours after defendant's arrest; that he warned defendant of his constitutional rights; that defendant stated he would answer any questions the officer asked; that defendant was questioned about his conduct on the morning of the robbery; that defendant denied having had anything to do with the robbery, but in accounting for his presence in the area of the abandoned vehicle at the time of his arrest defendant contradicted himself and then said "Well, what kind of a deal can you give me if I tell you anything about the robbery?" The officer

further testified that he told defendant there would be no deals. Upon hearing that defendant requested an attorney. The request for an attorney concluded the conversation. During cross-examination of Officer Ortega by defense counsel, the following ensued:

"Q Officer, you advised him of these rights that you read from this card prior to him saying anything concerning this robbery?

"A Yes, sir.

"Q And you made no promises to him at all?

"A None.

"Q Were you with anyone else at the time that you had this conversation with the defendant?

"A No, sir.

"Q Was the defendant intoxicated at the time you spoke to him?

"A No, he wasn't.

"Q Did the defendant seem very fatigued or tired at the time that you spoke to him?

"A No, he was not. He didn't appear to.

"Mr. Stern: I see. The defense would offer no objection to the voluntariness of anything said between the officer and the defendant.

"THE COURT: Very well. The court will accept the proferred testimony then and find that the statement was made voluntarily.

In State v. Scanlon, 104 Ariz. 187, 450 P.2d 377, (February 7, 1969), we held that Pulliam, supra, does not apply to a case where "defendant failed to object to the admission of the confession, failed to request an instruction, and failed to object to the instructions given." The rationale behind the rule enunciated in Scanlon is that it would be ridiculous to require the jury to consider the voluntariness of a confession where the voluntariness is clear as a matter of law from defendant's own uncontradicted testimony. In the instant case defense counsel not only failed to object to the admission of the exculpatory statements but actually stated that the defense had no objection to the statements as being involuntary. The record does not indicate the defendant requested an instruction on voluntariness or objected to those given. The instant case clearly comes within our ruling in Scanlon, supra, and it is therefor our opinion that the court did not err in failing to give a voluntariness instruction.

Affirmed.

LOCKWOOD, V. C. J., and STRUCKMEYER, McFARLAND and HAYS, JJ., concur.