457 P.2d 297

**STATE of Arizona, Appellee,**
**v.**
**Ernest Jesus NAVALLEZ, Appellant.**
**No. 2 CA–CR 148.**

Court of Appeals of Arizona.
July 17, 1969.
Rehearing Denied Sept. 3, 1969.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Minker & Deckter, by Louis L. Deckter, Tucson, for appellant.

KRUCKER, Judge.

The defendant, Ernest Jesus Navallez, was informed against for the crime of first degree burglary. Earlier charges of giving false information to a police officer were dropped. Prior to trial, a motion to suppress evidence discovered prior to the burglary arrest was heard and denied. A motion for directed verdict was also denied. The jury found the defendant guilty and judgment was so entered. He was sentenced to not less than four nor more than six years. Defendant appeals, challenging the trial court's determination that he had been given correct *Miranda* warnings, the denial of the motion to suppress, and the denial of the directed verdict.

Taking the facts in a light to sustain the verdict, on July 10, 1968, a trailer park resident, Jack L. Harris, whose habit it was to arise about 2:30 a. m., was drinking his morning coffee when he observed someone park a car in his trailer park area and remove something from the trunk.

The person then walked around a fence bordering the property, and Mr. Harris heard a ripping, tearing noise. Suspicion aroused, he went out to the car and took its license number and noted its general description: a white Chevrolet with a black racing stripe and no hubcaps. At about 5:00 a. m. he saw the man come "out from the back end of the Ports O'Call," a restaurant next to the trailer park; his pockets were stuffed with something white. The man got into his car and drove away, the muffler sounding loudly.

Mr. Harris called the police and informed them of the incident. Ten minutes later Officer Schlesinger arrived and took the license plate number which Mr. Harris had written down. He then went over to the restaurant where he observed a kitchen vent and cooler duct on the roof were torn apart. Another police unit had been summoned and while waiting, Officer Schlesinger observed the car described by Mr. Harris proceeding north on Miracle Mile. He pursued and stopped it. He obtained the driver's license, read him the warnings mandated by Miranda v. Arizona, infra, and questioned him for fifteen minutes. He asked him if the car had been in his possession all night and received an affirmative response. The second patrol car then arrived. The officers searched the car and found a tire iron, other tools, a white bar rag, and a bar rag containing loose change, including some fifty-cent pieces. The officers also discovered soot smudges on the inside of defendant's sweatshirt which was being worn inside out.

The defendant was placed under arrest, charged with giving false information to an officer and taken to the city jail. Five hours later he was charged with the burglary. During those five hours the police had returned to the restaurant and with the maanger discovered that a cigarette machine had been broken into and some fifty-cent pieces taken from a hiding place behind the bar. At trial, a bartender at the restaurant identified defendant as having been present at the bar on July 9 and within viewing distance of an illusion trick the bartender did with the fifty-cent pieces and his placing them under the bar. A criminologist testified that the soot from

the roof and the defendant's sweatshirt were undistinguishable.

Defendant consistently maintained that he had left his girl friend's home at about 3:30 a. m. and that while driving to his motel, his car muffler fell off. He stated it was too hot to fix, so he napped in his car for an hour and a half and finally fixed it about 5:00 a. m. He was stopped by the police on his way home.

■ His first contention is that the standard *Miranda* warnings of the Tucson Police Department are unconstitutionally incomplete under that case. He quotes:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant argues that this wording requires that anyone advised of his rights should be told that he may exercise these rights *at any time*, not just initially.

We believe this question was recently answered in State v. Bible, 104 Ariz. 346, 452 P.2d 700 (1969), and defendant at oral argument conceded that *Bible* decided the issue against him.

We therefore address ourselves to the next question—did the trial court err in denying the motion to suppress evidence obtained prior to arrest? Two distinct searches were made; the defendant's person was searched, and, later, his vehicle.

The first search took place when the police officer raised defendant's sweatshirt to inspect the inside of it. The defendant did not protest or give permission. Smudge marks were found on the sweatshirt, which a criminologist later testified were not distinguishable from those found on the roof of the Ports O'Call.

The second search was of the vehicle; no warrant was presented. Defendant stated he had nothing to hide and to go ahead. The search revealed two white towels of the type used in bars, one of which contained loose change and was found under the front seat. A tire iron, a pair of slip joint pliers, a crescent wrench and screwdrivers were found under the passenger side of the front seat.

■ The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Evidence obtained in violation of the above is inadmissible in state criminal prosecution. State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963); State v. Goff, 99 Ariz. 79, 407 P.2d 55 (1965); State v. Taylor, 3 Ariz.App. 157, 412 P.2d 726 (1966).

■ Evidence discovered and seized when in plain view in a car, defendant being stopped for traffic violations is not an unreasonable search. State v. Perez, 7 Ariz.App. 567, 442 P.2d 125 (1968). Evidence discovered incident to a valid arrest is admissible. Seeber v. United States, 329 F.2d 572 (9th Cir. 1964); State v. Gunter, 100 Ariz. 356, 414 P.2d 734 (1966); State

v. McFall, 103 Ariz. 234, 439 P.2d 805 (1968); Evidence discovered under authority of a valid search warrant is admissible. State v. Taylor, 2 Ariz.App. 314, 408 P.2d 418 (1965). Evidence discovered with the consent of the person being searched is also admissible. State v. Taylor, supra, citing State v. Pina, 94 Ariz. 243, 383 P.2d 167 (1963); State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963).

The ultimate test is whether the search was reasonable under the circumstances. This court is inclined to give weight to the trial court's determination of what was reasonable under the circumstances. 79 C.J.S. Searches and Seizures § 8; State v. Taylor, supra.

In the instant case, the police officers stopped defendant because they had received information from a resident next to the Ports O'Call that a man, driving a car with the same license number and description had been the probable burglar of the Ports O'Call restaurant, which the police officer had investigated. The defendant was arrested and taken to the Tucson City Jail for furnishing false information to a police officer. At noon the next day, five hours later, he was charged with the burglary.

The trial court, at a hearing on a Petition for Writ of Habeas Corpus and a motion to suppress evidence at the time of arrest, denied both requests. The court believed probable cause existed to arrest for false information in light of Mr. Harris' information about the car's presence that night and defendant's testimony to the contrary, and that the search thereunder was reasonable.

In State v. Vaughn, 104 Ariz. 240, 450 P.2d 698 (1969), the defendants, suspected of a gas station robbery, were chased by a police car. On seeing defendant walk near the area where chase had been given, an officer, summoned to the area, stopped the defendant and conducted a search of his person. The officer put defendant under arrest for robbery and the court held that the arrest was valid and so was the search incident thereto.

In State v. Cofhlin, 3 Ariz.App. 182, 412 P.2d 864 (1966), we held that a delay between a search of defendant's apartment and person, and a subsequent burglary arrest, did not render the search unconstitutional. In that case the defendant was identified by some soldiers who had given him a ride and had connected him with burglaries written up in a newspaper. The police went to the defendant's apartment, searched him and the premises, drove him to the Sierra Vista Police Station where the soldiers identified him, and then drove him to Bisbee and charged him with burglary. See also State v. Taylor, supra.

In the instant case, defendant was reported to the police by a local resident, Mr. Harris, as suspect in a burglary. The police stopped him in his automobile, three blocks north of the burglarized restaurant, bearing the license number and description given by Mr. Harris. The officer had inspected the premises and a burglary had apparently occurred as Mr. Harris surmised. The officer also asked the defendant some questions, and defendant admitted having the vehicle all night and being in exclusive control of it. At that point, the officer commenced the searches in question. Defendant was then arrested for giving false information and taken to jail. He was, five hours later, charged with burglary.

We believe the searches in the instant case were reasonable under the circumstances. State v. Taylor, 2 Ariz.App. 314, 408 P.2d 418 (1965). Under the reasoning in Cofhlin, supra, the searches were reasonably incident to the arrest and later burglary charge. And under the trial court's reasoning here, the searches were reasonable as incident to the arrest and charge of giving false information to a police officer, as necessary to confirm the car's presence and perhaps its driver's presence at the scene of the crime. We believe, in any event, that the officer could instead at that time have arrested the defendant for burglary under A.R.S. § 13–1403 subsec. 3, as amended; State v. Vaughn, supra.

The last question raised by defendant is whether a verdict should have been directed on the basis that a reasonable inference of innocence could be drawn from this entirely circumstantial case.

The substance of defendant's argument rests on the traditional circumstantial evidence rule that when a case is based solely on circumstantial evidence, the jury must find for defendant if there is *any* reasonable hypothesis of innocence.

Defendant claims that his "alibi" was a reasonable inference and should have resulted in a directed verdict.

 This is not the rule. State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968). The jury and not the court decides what reasonable inferences are to be drawn, otherwise a trial judge would always determine the question at the close of every circumstantial case. The sole function of the appellate court is to decide whether there was substantial evidence to support the verdict. State v. Ortiz, 9 Ariz.App. 116, 449 P.2d 953 (1969). We believe there was.

Judgment affirmed.

MOLLOY, C. J., and HATHAWAY, J., concur.