691 P.2d 689

**STATE of Arizona, Appellee,**

v.

**Robert HENSLEY, Appellant.**

**No. 5556–2.**

Supreme Court of Arizona,
In Banc.

Nov. 28, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Div., Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

GORDON, Vice Chief Justice:

This is an appeal from a reimposition of the death sentence by the trial court on defendant, Robert Lee Hensley. On January 26, 1981, defendant, Robert Cihak and Robert Berndt went to the Tin Horn Saloon to "hold up the place." Defendant was armed with a gun and shot three people during the course of the robbery, killing two of them. The facts are set out more fully in this Court's opinion in *State v. Hensley*, 137 Ariz. 80, 669 P.2d 58 (1983). Defendant was convicted on two counts of first degree murder. At the first sentencing, the trial judge found that the two murders were committed in expectation of pecuniary gain under A.R.S. § 13–703(F)(5), and defendant was sentenced to death on two counts of murder.[1] In *State v. Hens-*

---

1. Defendant was also sentenced to consecutive terms of twenty-one years imprisonment for at-

tempted murder and robbery convictions. The propriety of the attempted murder and robbery

*ley, supra,* this Court vacated the death sentence and remanded the case for resentencing, holding that the trial court erred in considering materials at the sentencing hearing which had been submitted under stipulation permitting their use for determination of the issues of guilt or innocence only. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

On remand a sentencing hearing was conducted. Two witnesses testified, Robert Cihak, one of the other perpetrators, and Joyce Windemuth who had been living with defendant, Cihak and Berndt, for about one week prior to the robbery and the murder. At the conclusion of the hearing the death penalty was imposed.

Defendant raises two issues on appeal contesting the death sentence:

1. Whether the trial judge failed to find the aggravating factor that the murders were committed for pecuniary gain beyond a reasonable doubt.

2. Whether the trial judge properly admitted the testimony of Joyce Windemuth at the sentencing hearing against a relevancy objection.

## I

At the second sentencing hearing on remand the trial judge found the existence of one aggravating circumstance, namely that the two murders "were committed in the course of an armed robbery and hence, in the expectation of receiving a monetary gain." [2] The defendant points to certain selected language used by the trial judge during an in-chambers discussion with counsel prior to sentencing in making his first argument:

"My concern, which I have shared with Randy and Jim, is that based upon the rather short, meager record today, and based upon my apparent limitations of

---

sentences, however, are not issues on this appeal.

**2.** The trial judge also found one mitigating factor, that the defendant had earned a G.E.D. between his initial conviction and sentencing.

consideration simply to those matters, I am quite candidly unsure that there is enough in the record to convince an independent court, apart from myself, that there is enough aggravation to justify a death penalty, not that I particularly want one.

\* \* \* \* \* \*

" * * * based on the record that has been presented today I have some hesitation in being convinced that any reviewing court looking at this evidence with more objectivity and more independence than I possess at the present time would uphold it.

\* \* \* \* \* \*

"The reasonable doubt does not originate from a lack of information in my mind. The reasonable doubt originates because of the rather meager evidence presented today when viewed from the standpoint from a totally independent court someday which is going to review this.

\* \* \* \* \* \*

"My hang-up, and maybe I am not stating it correctly, is when an independent court reviews the record is it going to appear to that court that you have proven, Randy, the aggravating factor of pecuniary gain?

\* \* \* \* \* \*

"I have done my best to ignore the things that I know about you from the other sources and I have limited my consideration to the evidence presented by Mr. Cihak and Ms. Windemuth this morning."

The defendant argues that only two conclusions can be drawn from this language: (1) the trial judge had reasonable doubt as to the existence of the aggravating factor that the murders were committed in expectation of monetary gain, or (2) the trial judge based his imposition of the death

---

The trial judge found, however, that the mitigating factor was "insufficient to outweigh the one aggravating factor of the commission of [the] murders for the expectation of monetary gain" and therefore sentenced defendant to death.

penalty, in some measure, upon the submitted materials which this Court in *State v. Hensley, supra,* said he could not consider.

■■■■ As to defendant's first contention we recognize that in order to impose a sentence of death the trial judge must find the existence of one or more aggravating factors beyond a reasonable doubt. *State v. Jeffers,* 135 Ariz. 404, 661 P.2d 1105; *cert. denied,* —— U.S. ——, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). *See* A.R.S. § 13–703(E). We do not believe, however, that the trial judge had reasonable doubt as to the existence of the aggravating factor when he made his finding. The trial judge was aware that the standard was reasonable doubt and was aware of his duty to follow this standard when making his finding. During the in-chambers discussion, defense counsel and the prosecutor brought the reasonable doubt standard to the trial judge's attention, and defense counsel admonished the trial judge to follow this standard:

[Defense counsel]: "I also believe under the case law that has been decided that *you are required to find aggravation beyond a reasonable doubt* and just the mere sentiments you have already expressed in this room and repeated on the record, leave you now no doubt what you have to do. You have voiced a doubt twice, once on the record and once off the record. This is a death penalty case. You can't have a situation going one way one minute and one way another minute. This is a death case and you voiced your doubts already.

"There should be no question at this point what you are going to do. You voiced your doubts. *If you can't find an aggravating circumstance beyond a reasonable doubt, you should go out there and give the man a life sentence* and be done with it." (Emphasis added.)

\* \* \* \* \* \*

[The prosecutor]: "The only evidence presented was that it was done for mone-

tary gain. That is the statutory aggravating circumstance. There is no doubt about that and there is no argument about it.

"On the other side of the coin is the evidence of mitigation, the only evidence of mitigation is the G.E.D. That's all there is and that aggravating circumstance should stand beyond any doubt in the world, beyond the shadow of a doubt, not beyond a doubt, but there is no question about it."

The trial judge also mentioned the terms "reasonable doubt" during this discussion indicating his awareness of the appropriate standard.

At the end of the in-chambers discussion, the trial judge had the court reporter read back Cihak's testimony relating to the taking of the money from the cash register during the robberies and relating to why the three men went into the tavern. After some further discussion the trial judge recessed the in-chambers meeting so he would have time to consider the evidence presented at the hearing before making his final determination. A short time later the court reconvened, and the trial judge found that the aggravating factor existed. Although the trial judge appears to have vacillated during the in-chambers discussion on the existence of the aggravating factor, we can only believe that during the recess he reconsidered the evidence and resolved whatever doubts he may have had and "found after consideration of the record" beyond a reasonable doubt that the "offenses were committed in the course of an armed robbery, and hence, in the expectation of receiving a monetary gain." Any other interpretation would require us to say that the trial judge did not find the aggravating factor in question beyond a reasonable doubt when such a finding was ultimately made by the trial judge.

■■■■ In his second contention defendant argues that the trial judge relied upon improper materials in making his finding of the aggravated circumstance. According to the holding of *State v. Hensley, supra,* the trial judge could not consider the sub-

mitted material at trial during re-sentencing. Defendant's argument is contrary to the record.

In stating his basis for the finding, the trial judge indicated that he only relied on the evidence presented by the two witnesses at the sentencing hearing.

[THE COURT] "I have reviewed the opinion of the Supreme Court.

"I have explicitly not reviewed my notes which were taken during the trial of your codefendants, Berndt and Cihak.

"I have also not reviewed my notes of the police report which I did consider at the time of your submission.

"I have done my best to ignore the things that I know about you from the other sources and I have limited my consideration to the evidence presented by Mr. Cihak and Ms. Windemuth this morning.

\* \* \* \* \* \*

THE COURT: "MR. HENSLEY, regarding both the killing of Perry Cooper and Mary Thurman I found after a consideration of the record that appears from this morning's proceedings that both of these offenses were committed in the course of an armed robbery and, hence, in the expectation of receiving a monetary gain."

We find that the trial judge based his finding of the aggravating factor solely on evidence admitted in the sentencing hearing in accordance with this Court's decision in *State v. Hensley, supra.* [3]

## II

Defendant's second major contention is that the testimony of Joyce Windemuth was irrelevant. At the aggravation hearing Windemuth testified over objection to certain observations of and conversations with the defendant. She testified that on the day of the robbery, January 26, 1981, she saw a gun in defendant's possession after the robbery, and that when defendant returned that evening with Berndt and Ci-

hak, defendant unloaded expended bullets from the gun. On the following day, defendant told Windemuth that, Berndt, Cihak and himself "went to a bar and robbed it" and that "he left no witnesses." She also testified that defendant told her that he had shot four persons one time each but that defendant had neither mentioned the name of the bar they had robbed nor the street on which the bar was located.

In his brief defendant points to the fact that only three victims were actually shot during the robbery, two of the victims being shot twice and the third victim once. The thrust of defendant's argument seems to be that since Windemuth's testimony relating to the victims differed from the undisputed facts her testimony must have related to some other robbery and thus was irrelevant.

Rule 401, Arizona Rules of Evidence, 17 A.R.S., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay. 17A A.R.S. Arizona Rules of Evidence, rules 402 and 403. In determining the relevancy and admissibility of evidence, the trial judge is invested with considerable discretion. *State v. Starks*, 122 Ariz. 531, 596 P.2d 366 (1979). Such discretion will not be disturbed on appeal unless clearly abused. *State v. Spoon*, 137 Ariz. 105, 669 P.2d 83 (1983).

We do not believe that the trial court abused its discretion in admitting Windemuth's testimony. Although one could draw an inference that Windemuth's testimony related to another independent robbery, the inference that her testimony

---

**3.** Since in this case we have not vacated defendant's death penalty, we need not decide defendant's contention that double jeopardy considera-

tions apply prohibiting a third reimposition of the death sentence.

related to the Tin Horn Saloon robbery was equally, if not more probable. Chihak testified at the sentencing hearing that the Tin Horn Saloon robbery was the only robbery that he, defendant and Berndt committed on the night of January 26. In his discussions with Windemuth on January 27th, the defendant's admission related to only one robbery, and indicated that he shot all the witnesses at the robbery scene. From this the trial judge could conclude that defendant's admission related to the Tin Horn Saloon robbery. Even though more than one inference exists that can be drawn from a given set of facts, this does not render the evidence inadmissible merely because one of the inferences is irrelevant to the case at bar. *See Bush v. Jackson,* 191 Colo. 249, 552 P.2d 509 (1976). The trial judge was at liberty to determine which inference he would draw after listening to all the witnesses and considering all the evidence. *See State v. Savoy,* 109 Ariz. 531, 514 P.2d 452 (1973) (trier of fact decides what inference to draw from evidence); *State v. Navallez,* 10 Ariz.App. 135, 457 P.2d 297 (1969) (accord). The fact that Windemuth's testimony factually differed from the submitted stipulated facts on some details of the robbery does not render the testimony irrelevant. A conflict in the evidence will not render the proffered evidence inadmissible but rather goes to the weight to be given the testimony by the trial judge. *See State v. Money,* 110 Ariz. 18, 514 P.2d 1014 (1973); *State v. Merryman,* 79 Ariz. 73, 283 P.2d 239 (1955).

We find that Windemuth's testimony relating to the gun and defendant's admissions was relevant since it had a tendency to show that defendant was responsible for the homicide and that the homicides were committed to facilitate the robbery by preventing identification of the perpetrators. Furthermore, we find that Windemuth's testimony did not tend to confuse the issues, unduly delay the trial, mislead the trier of fact or unfairly prejudice defendant. The trial judge did not abuse his discretion in admitting this testimony.

## INDEPENDENT REVIEW

In a death penalty case, this Court independently reviews the record to determine the presence or absence of aggravating circumstances and the weight to be given to each. We must also determine the propriety of the sentence. *State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *State v. Blazak,* 131 Ariz. 598, 643 P.2d 694, *cert. denied,* 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). The trial court correctly found the aggravating circumstance that the offense was committed for pecuniary gain A.R.S. § 13–703(F)(5).

The legislature has made it clear that the death penalty is not to be imposed in every case of first degree murder. The death penalty is reserved for the cases where the manner in which the crime as committed raises it above the norm of first degree murders. *State v. Blazak, supra.* Justice Gordon, specially concurring in *State v. Harding,* 137 Ariz. 278, 296–97, 670 P.2d 383, 394–95 (1983) *cert. denied,* — U.S. ——, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984), noted this and stated:

"The language in A.R.S. § 13–703(F)(5) makes clear, however, that this aggravating circumstances does not apply in every situation where an individual has been killed while at the same time the defendant has made a financial gain. It is limited to those situations where 'the defendant committed the offense * * * *in the expectation* of the receipt of anything of pecuniary value.' A.R.S. § 13–703(F)(5) (emphasis added). In other words, the hope of pecuniary gain must provide the impetus for the murder. For example, if a beneficiary killed an insured in order to gain the proceeds of a life insurance policy this aggravating circumstance would be satisfied. On the other hand, an unexpected or accidental death that was not in furtherance of the defendant's goal of pecuniary gain, which occurs during the course of or flight from a robbery, does not in itself

provide a sufficient basis for finding the same aggravating circumstance. The aggravating circumstance in paragraph 5 should be found only in those cases where the murder is part of the defendant's overall goal of pecuniary gain, not merely when a death occurs during which time the defendant benefitted financially." (emphasis in original)

 In this case, the murders were a part of the overall scheme of the robbery with the specific purpose to facilitate the robbers escape. The defendant had the three victims lie on the floor during the robbery and before leaving the bar shot each victim in turn with the intent that no witnesses be left to identify the robbers. The murders were not unexpected or accidental. *Cf. State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982) (drowning Purolator guards after robbery); *State v. Gretzler, supra,* (defendants committed the murders "to obtain a substitute car in which they could continue their flight"); *State v. Tison,* 129 Ariz. 546, 633 P.2d 355 (1981); *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982) (homicides were committed to secure a vehicle in which assailants could continue their flight.

As to the mitigating factors the court found that defendant had obtained a G.E.D. degree. We find that the mitigation offered by appellant is not sufficiently substantial to outweigh the aggravating circumstance.

## PROPORTIONALITY REVIEW

 Lastly, this Court conducts a proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976) *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). We have considered other cases in which defendants robbed and murdered their victims. *State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1982); *State v. Gretzler, supra; State v. Tison, supra; State v. Evans,* 120 Ariz. 158, 584 P.2d 1149 (1978) *sentence aff'd,* 124 Ariz. 526, 606 P.2d 16, *cert. denied,* 449 U.S. 891, 101 S.Ct. 252, 66 L.Ed.2d 119 (1980); *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). We find that the resolution in the instant case is not disproportionate to these cases. There has been no suggestion or evidence in the record that the judge's decision to impose the death penalty was affected by passion, prejudice or any other arbitrary factor. As to the subsequent proceedings that have taken place after defendant's last appeal, we have searched the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none.

The judgment of conviction and sentence imposed by the trial court are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.